Jerry W. REED et ux.

v.

WASHINGTON TRAILER SALES, INC., and Commerce Union Bank.

No. 74–220–NA–CV.

United States District Court, M. D. Tennessee, Nashville Division.

Dec. 30, 1974.

Jim K. Duncan, Murfreesboro, Tenn., William R. Lauer, Trustee, for plaintiff.

John G. Mitchell, Jr., Murfreesboro, Tenn., H. Frederick Humbracht, Jr., Nashville, Tenn., for defendants.

## MEMORANDUM

MORTON, District Judge.

■ This is an action under the Truth in Lending Act, 15 U.S.C. § 1601 et seq., arising out of plaintiffs' purchase of a mobile home from Washington Trailer Sales, Inc. (Washington). Washington is in the business of selling and financing new and used mobile homes, or trailers, for profit. Commerce Union Bank (C.U.B.), a banking corporation doing business in the State of Tennessee, is the assignee of the sales contract, and is an issuer of credit within the meaning of the Act. Violations of the Act's disclosure provisions have been alleged and plaintiffs seek to recover the statutory damages provided in 15 U.S.C. § 1640(a). The court's jurisdiction is invoked under 15 U.S.C. § 1640(e).

On December 7, 1973, plaintiffs executed an "installment sales contract" for the purchase of a "new 1974 Holiday Mobile Home" from Washington. At that time, plaintiffs made a cash down payment of $863.00 and were furnished a duplicate of the sales contract by a salesman for Washington. On December 13, 1973, Washington assigned the sales contract to C.U.B.; however, plaintiffs made no payments under the sales contract other than the cash down payment previously mentioned, and the mobile home was subsequently repossessed.

This suit was instituted on May 17, 1974. With approval of the parties, all pleadings were amended to comply with the pre-trial order entered on October 14, 1974. Plaintiffs proceeded on two theories: 1) that defendants violated the Act by failing to include the cost of insurance premiums in the "finance charge," and 2) that defendants violated the Act because the statement that plaintiffs could obtain required insurance through a person of their own choice was not "clear, conspicuous and specific."

As an incident of the sale, plaintiffs were required to obtain three types of insurance coverage: 1) Broad Form Comprehensive, 2) Broad Form Personal Effects, and 3) Vendor's Single Interest. The insurance requirement was discussed by plaintiffs and Washington's salesman and plaintiffs understood that it would be necessary to obtain the insurance before the mobile home was delivered. The salesman told plaintiffs that Washington would either arrange for all of the required insurance or allow plaintiffs to arrange for the required insurance elsewhere. Plaintiffs elected to have Washington arrange for the required coverage, and the sales agreement was executed. The meritorious issues in this suit essentially address the question of whether the sales agreement conforms to the disclosure requirements imposed by the Act and the regulations promulgated thereunder.

The initial issue concerns disclosures associated with the Vendor's Single Interest policy. The Act and regulations require that the "finance charge" include:

Premium or other charge for any other guarantee or insurance protecting the creditor against the customer's default or other credit loss. 12 C.F.R. § 226.4(a)(7).

The interpretative regulation found at 12 C.F.R. § 226.404(b) provides:

If the insurer waives all right of subrogation against the customer in a single interest policy of insurance against loss of or damage to property (which may include coverage for skip,

concealment, conversion, and embezzlement) written in connection with a credit transaction, and the creditor complies with the requirements of § 226.4(a)(6), charges or premiums for such insurance may be excluded from the amount of the finance charge on that transaction. However, if the insurer does not so waive subrogation in such policy of insurance, the charges or premiums shall be included in the finance charge.

In this case the Vendor's Single Interest policy provided for the waiver of subrogation rights in the following terms:

5. The Company waives any right to subrogation against the Lienholder except such actions as may result from the fraudulent action of the Lienholder. The Company waives any right to subrogation against the Named Insured in respect to any claim paid under this coverage, without, however, precluding or waiving any right to repossess the mobile home.

 The effect of the waiver of subrogation is that the credit customer, plaintiffs herein, acquires protection against a deficiency money judgment should any event included under the policy occur. Thus, the policy is essentially a policy for protection against loss of property within the contemplation of 12 C.F.R. § 226.4(a)(6). Non-waiver of the right to repossess the mobile home does not alter this effect. The right to repossess is distinct from the question of subrogation under the Vendor's Single Interest policy. The right of subrogation, if not waived, would arise solely under the policy of insurance. The right of repossession is independent of the insurance contract and is derived from the sales agreement. If the creditor assigns the sales agreement to the insurance company, then it would be on that basis that the insurance company would seek to repossess the mobile home and not on the basis of the insurance policy.

The requirements detailing those items, or charges, to be included in the finance charge are set forth in 15 U.S.C. § 1605 and 12 C.F.R. § 226.4. The requirements relating specifically to policies for property insurance provide that the cost must be included in the finance charge *unless* the creditor provides the credit customer:

a clear, conspicuous, and specific statement in writing . . . setting forth [a] the cost of insurance if obtained from or through the creditor and [b] stating that the . . . [credit customer] may choose the person through which the insurance is to be obtained. 12 C.F.R. § 226.4(a)(6).

It is apparent that the cost of the required insurance was not included in the finance charge. Therefore, the question raised is whether the disclosures on the face of the sales agreement constitute a "clear, conspicuous, and specific" statement of the cost and the option of obtaining the insurance elsewhere.

 The Act and regulations do not provide an express interpretative aid for determining what constitutes a "clear, conspicuous, and specific statement" of a) the cost of insurance and b) the credit customer's option of obtaining the insurance elsewhere. However, the statement of purpose accompanying the regulations provides an insight to the appropriate construction and application of the requirements in issue:

This part implements the Act, the purpose of which is to assure that every customer who has need for consumer credit is given meaningful information with respect to the cost of that credit which, in most cases, must be expressed in the dollar amount of finance charge, and as an annual percentage rate computed on the unpaid balance of the amount financed. *Other relevant credit information must also be disclosed so that the customer may readily compare the various credit terms available to him from different sources* and avoid the uninformed use of credit. . . . 12 C.F.R. § 226.1(a)(2) (emphasis added).

With this standard in mind the disclosure of the cost of insurance must be made in a manner which provides a meaningful statement of the cost if insurance is obtained through the creditor. The face of the sales agreement clearly states the aggregate cost of the required property insurance.

■ Plaintiffs contend that the separate cost of each insurance policy should be disclosed, and that in providing the aggregate cost of those policies defendants violated the Act. However, there is no specific requirement in the Act or the regulations calling for such itemization. The stated purpose of the Act is to provide the credit customer with a "meaningful disclosure" allowing for comparative shopping for credit terms. A meaningful disclosure in this case was provided by stating the aggregate insurance cost, since the defendants were offering to arrange for either all of the required insurance coverage or none of it. The cost of the coverage, if acquired through defendants, is clearly and conspicuously stated. Further, since the premium cost was to be financed, it was properly included as "other charges" in computing the "amount financed" and itemized as "property insurance" for a term of 60 months. The disclosure of the premium cost conforms to the requirements of 12 C.F.R. § 226.4(a)(6) and 226.8(c)(4).

■ The second element of the disclosure requirements under 12 C.F.R. § 226.4(a)(6) is that the option of obtaining insurance through a source of the credit customer's choice be stated in "clear, conspicuous and specific" terms.

The sales agreement contains a blocked section captioned "INSURANCE" and subdivided into sections for property insurance and credit life insurance. Following the caption "PROPERTY INSURANCE" is the following statement:

Insurance against accidental damage to or loss of the property is required.

Buyer agrees to maintain the following insurance coverage until indebtedness is paid in full:

Following this caption are two braces, with accompanying "check blocks" and blank spaces for the designation of applicable policy limits, for automobile and mobile home insurance coverage. The brace captioned "Mobile Home" contains the following list:

[ ] Broad Form Comprehensive
[ ] Broad Form Personal Effects
 $——————————————
[ ] Vendor's Single Interest
[ ] ————————————————
 (specify other insurance)

The first three blocks in this brace contain a large "X" added in handwriting and the blank space under Broad Form Personal Effects has the figure "1000.-00" added in handwriting.

Immediately after the braces, indicating what insurance is required, is the following statement:

Buyer may choose person through whom Property Insurance is to be obtained. If it is not to be obtained through Seller, it will be obtained through:

————————————————————
 (Name of Agent)
————————————————————
 Address Tel. No.

The court concludes that the statement is clear and specific. The essential question is whether the statement is also conspicuous.

Plaintiffs contend that the term "conspicuous" requires that the statement in question be in a different color and size than other type used for other provisions of the sales agreement.

In support of this theory, plaintiffs rely on several cases applying the definition of "conspicuous" as contained in the Uniform Commercial Code. The U.C.C. provides:

General Definitions. Subject to additional definitions contained in the subsequent Articles of this Act which are applicable to specific Articles or

Parts thereof, and unless the context otherwise requires, in this Act:

\* \* \* \* \* \*

(10) "Conspicuous": A term or clause is conspicuous when it is so written that a reasonable person against whom it is to operate ought to have noticed it. A printed heading in capitals (as: Non-Negotiable Bill of Lading) is conspicuous. Language in the body of a form is "conspicuous" if it is in larger or other contrasting type or color. But in a telegram any stated term is "conspicuous". Whether a term or clause is "conspicuous" or not is for decision by the court. U.C.C. 1–201(10). [Also see: T.C.A. 47–1–201(10)].

■ From the qualification preceding the list of definitions in Article 1 of the U.C.C., it appears that the application of those definitions is limited to the specific legislative enactment and the definitions are not intended as general propositions. The definition of "conspicuous" advanced by plaintiffs has been uniformly followed by the Federal Courts, insofar as they have been called upon to rule in diversity cases involving the commercial code of a given state. However, this is not a diversity suit calling for application of the Uniform Commercial Code.

In setting forth the general requirement for disclosure under the Truth in Lending Act, 15 U.S.C. § 1631(a) provides:

General requirement of disclosure. (a) Each creditor shall disclose clearly and conspicuously, in accordance with the regulations of the Board, to each person to whom consumer credit is extended and upon whom a finance charge is or may be imposed, the information required under this part.

In implementing the statutory provision, Regulation Z states:

General disclosure requirements. (a) Disclosures; general rule. The disclosures required to be given by this part shall be made clearly, conspicu-

ously, in meaningful sequence, in accordance with the further requirements of this section, and at the time and in the terminology prescribed in applicable sections. Except with respect to the requirements of § 226.10, where the terms "finance charge" and "annual percentage rate" are required to be used, they shall be printed more conspicuously than other terminology required by this part and all numerical amounts and percentages shall be stated in figures and shall be printed in not less than the equivalent of 10 point type, .075 inch computer type, or elite size typewritten numerals, or shall be legibly handwritten. 12 C.F. R. § 226.6(a)

Beyond the specific requirements for disclosure of numerical amounts and percentages, the regulation prescribes two general standards of "conspicuously" and "more conspicuously." These terms must be construed within the context of the Act and Regulation Z, and it is to those sources that the court looks for clarification.

The language employed by Congress in 15 U.S.C. § 1605(c) provided that the insurance disclosure statement must be "clear and specific." In the corresponding regulation, 12 C.F.R. § 226.4(a)(6), the requirement was expanded to prescribe "a clear, conspicuous, and specific statement . . . ." However, in 15 U.S.C. § 1635 the standard established by Congress for disclosure of a customer's right of rescission requires that: "the creditor shall clearly and conspicuously disclose . . . ." The implementing regulation for this section is 12 C.F.R. § 226.9(b) which requires:

" . . . Such notice shall be printed in capital and lower case letters of not less than 12 point bold-faced type on one side of a separate statement which identifies the transaction to which it relates. . . .

■ In viewing the Congressional mandates for disclosure in these two sections, it appears that disclosure of the right to rescind certain transactions un-

der the Act was accorded the greater importance. The right of rescission is an important and novel right in the history of contract law, for under the Act a customer may rescind for no more reason than a "change of heart." It appears the newness of this right led Congress to insist that its disclosure would merit uncommon emphasis. It also appears that the greater importance of the rescission disclosure is carried through and reflected in the implementing regulation. The inference presented in the regulations is that "conspicuously," as used in 12 C.F.R. § 226.4(a)(6), is to be gauged from the context of the required statement rather than determined on the basis of a stringent standard.

Although this case stems from a credit transaction which is not an open end credit plan, the disclosure requirements for such open end credit plans are of assistance in determining what the term "conspicuously" means when used in the regulations. Various disclosures are required on periodic billing statements for open end accounts. See 15 U.S.C. § 1637 and 12 C.F.R. § 226.7. Under the terms of 12 C.F.R. § 226.7(c), a creditor has the option of making certain disclosures on the back side of the billing statement, if the face of the statement contains the prescribed notice. Although there is no express requirement that the notice required by this regulation be "conspicuous," it would seem that such a standard is inherent if the purpose of the requirement is to be achieved. 12 C.F.R. § 226.7(c)(3) further provides that disclosures ". . . shall not be separated so as to confuse or mislead the customer or obscure or detract attention from the information required . . . ." It appears that this standard calls for presentation of the required information in a clear and meaningful format, and in substance the section provides for a "conspicuous" disclosure.

■ Based on this review of disclosure requirements under the Act, it appears that varying standards are applied under the heading of "conspicuous."

Section 226.6(a) requires certain disclosures to be made "conspicuously" and others made "more conspicuously." However, that same section specifically states that certain disclosures be in no less than 10 point type. Section 226.-9(b) requires the rescission notice to be in "12 point bold-faced type." Disclosures under section 226.7(c)(3) shall not ". . . confuse or mislead the customer or obscure or detract attention . . . ." The degree of conspicuousness simply varies according to the context of the various disclosure requirements. While it would appear that all disclosures must be "conspicuous" according to some definition, it is clear that the degree of "conspicuousness" required relates to the importance or weight assigned to a particular disclosure.

■ The requirement for a "clear, conspicuous, and specific statement" under 12 C.F.R. § 226.4(a)(6) does not compel a creditor to use a particular print size, color, or boldness of type. In order to comply with this requirement all that is necessary is that the statement 1) convey the necessary information in lucid terms, 2) be located in logical proximity with the property insurance provisions of the contract, and 3) in such a manner so that the customer's attention is drawn to it. In this case, it appears from the face of the contract that there has been no effort to confuse or mislead the customer or otherwise detract his attention from the statement required by § 226.4(a)(6). The statement is in logical proximity to the other contract provisions relating to property insurance so as to reasonably attract attention. Immediately following the required statement there is space provided for the customer to designate the agent of his choice, which further serves to draw attention to the statement. With these considerations in mind, the court concludes that the statement in question is also conspicuous.

On the day of trial, it was pointed out that plaintiffs had filed petitions in

bankruptcy and the question was raised whether recovery under the Truth in Lending Act would be an asset which passes to the trustee of the bankrupts' estate under § 70 of the Bankruptcy Act, 11 U.S.C. § 110. Since the holding of the court is for the defendants on the merits of suit, the bankruptcy issue is not reached.

An appropriate order will be entered.