NATIONAL REPUBLIC BANK OF CHICAGO, Plaintiff and Counterdefendant-Appellee, *v.* MICHAEL PROCTOR, Defendant and Counterplaintiff-Appellant.

First District (2nd Division)   No. 77-1156

Opinion filed November 8, 1978.

Ron Fritsch, of Legal Aid Bureau, of Chicago, for appellant.

Paul M. Heller and Lenard Marcus, both of Wexler, Wexler & Heller, Ltd., of Chicago, for appellee.

Mr. JUSTICE BROWN delivered the opinion of the court:

Plaintiff filed a small claim action against defendant to recover the balance due on an installment note and security agreement, after the secured property was repossessed and sold or disposed. Defendant filed an answer and counterclaim. Plaintiff filed a motion to strike the

counterclaim. The trial court entered an order striking the counterclaim, finding that there is no just reason for delaying enforcement or appeal. Defendant appeals from that order.

On September 15, 1976, defendant borrowed $2,080.99 from the plaintiff and executed a "Note and Security Agreement," which agreement gave plaintiff a security interest in a 1975 Ford Mustang automobile.

Plaintiff repossessed the vehicle and sold it or otherwise disposed of it. On March 30, 1977, plaintiff filed a complaint for a deficiency balance of $567.86 and for attorney's fees of $82.50. The agreement was attached to the complaint as an exhibit.

On April 28, 1977, defendant filed an answer and a two count counterclaim. Defendant's answer admitted that the parties entered into a loan contract on September 15, 1976; denied that there was an account stated in the sum of $642.22; and denied that plaintiff was entitled to attorney's fees. Defendant's answer admits the allegations of the complaint that plaintiff made frequent demand for the sum of $2,327.22 (the amount financed plus the finance charge) which demands were refused, and that plaintiff gave defendant a rebate of $74.36 as interest on the loan, since the answer did not deny these allegations. Ill. Rev. Stat. 1975, ch. 110, par. 40(2).

Count I of the counterclaim alleged that plaintiff failed to properly make the disclosures on the contract required by certain provisions of the Truth in Lending Act (15 U.S.C. §1601 et seq. (1976)) and Regulation Z (12 C.F.R. §226.1 et seq. (1978)) promulgated thereunder by the Board of Governors of the Federal Reserve System in accordance with 15 U.S.C. §1604 (1976), including section 106(b) of the Act (15 U.S.C. §1605(b) (1976)) and section 226.4(a)(5) of Regulation Z (12 C.F.R. §226.4(a)(5) (1978)). Count I prayed for judgment against the plaintiff in the amount of $654.44 for the double-finance charge penalty set forth in section 130(a)(1) of the Act. 15 U.S.C. §1640(a)(1) (1976).

Count II of the counterclaim alleged that plaintiff repossessed the vehicle described in the contract; that defendant demands that plaintiff prove that it has complied with the requirements set forth in section 9—504(3) of the Uniform Commercial Code (Ill. Rev. Stat. 1975, ch. 26, par. 9—504(3)); and that defendant claims the benefit of the penalty set forth in section 9—507(1) of the Code (Ill. Rev. Stat. 1975, ch. 26, par. 9—507(1)) in the amount of $527.22.

Plaintiff filed a motion to strike the counterclaim. In response to count I, plaintiff alleged that it fully complied with the required disclosures as per the agreement. In response to count II, plaintiff alleged that count II does not state a cause of action and is insufficient in law and moved to strike count II pursuant to section 45 of the Civil Practice Act (Ill. Rev. Stat. 1975, ch. 110, par. 45).

On May 10, 1977, the trial court entered an order striking the counterclaim. The defendant now appeals, and raises the following contentions: (1) that count I of his counterclaim should not have been stricken since he did not give "specific affirmative written indication" and "specific dated and separately signed affirmative written indication" of his desire for credit life and disability insurance after he had received written disclosure of the cost of that insurance; (2) that count I of his counterclaim should not have been stricken since the agreement failed to "clearly and conspicuously" inform him that he was not required to purchase credit insurance and that his refusal to purchase credit insurance would not be a factor in obtaining credit from plaintiff; and (3) that count II of his counterclaim should not have been stricken since it states a cause of action.

As regards defendant's first two contentions, it is undisputed that the "Note and Security Agreement" does not include the credit insurance premiums within the finance charge, and therefore the agreement had to comply with the disclosure provisions of section 106(b) of the Truth in Lending Act (15 U.S.C. §1605(b) (1976)) and section 226.4(a)(5) of Regulation Z (12 C.F.R. §226.4(a)(5) (1978)). Section 121(a) of the Act (15 U.S.C. §1631(a) (1976)) and section 226.6(a) of Regulation Z (12 C.F.R. §226.6(a) (1978)) are related to and amplify those disclosure provisions.

Section 106(b) of the Act (15 U.S.C. §1605(b) (1976)) provides as follows:

"Charges or premiums for credit life, accident, or health insurance written in connection with any consumer credit transaction shall be included in the finance charge unless

(1) the coverage of the debtor by the insurance is not a factor in the approval by the creditor of the extension of credit, and this fact is clearly disclosed in writing to the person applying for or obtaining the extension of credit; and

(2) in order to obtain the insurance in connection with the extension of credit, the person to whom the credit is extended must give specific affirmative written indication of his desire to do so after written disclosure to him of the cost thereof."

Section 121(a) of the Act (15 U.S.C. §1631(a) (1976)) provides in pertinent part:

"Each creditor shall disclose clearly and conspicuously, in accordance with the regulations of the Board, to each person to whom consumer credit is extended, the information required under this part * * *."

Section 226.4(a)(5) of Regulation Z (12 C.F.R. §226.4(a)(5) (1978)) provides as follows:

"Except as otherwise provided in this section, the amount of the finance charge in connection with any transaction shall be

determined as the sum of all charges, payable directly or indirectly by the customer, and imposed directly or indirectly by the creditor as an incident to or as a condition of the extension of credit, whether paid or payable by the customer, the seller, or any other person on behalf of the customer to the creditor or to a third party, including any of the following types of charges:

＊ ＊ ＊

(5) Charges or premiums for credit life, accident, health, or loss of income insurance, written in connection with any credit transaction unless

(i) the insurance coverage is not required by the creditor and this fact is clearly and conspicuously disclosed in writing to the customer; and

(ii) any customer desiring such insurance coverage gives specific dated and separately signed affirmative written indication of such desire after receiving written disclosure to him of the cost of such insurance."

Section 226.6(a) of Regulation Z (12 C.F.R. §226.6(a) (1978)) provides in pertinent part:

"The disclosures required to be given by this part shall be made clearly, conspicuously, in meaningful sequence, in accordance with the further requirements of this section, and at the time and in the terminology prescribed in applicable sections. Except with respect to the requirements of §226.10, where the terms 'finance charge' and 'annual percentage rate' are required to be used, they shall be printed more conspicuously than other terminology required by this part and all numerical amounts and percentages shall be stated in figures and shall be printed in not less than the equivalent of 10 point type, .075 inch computer type, or elite size typewritten numerals, or shall be legibly handwritten. ＊ ＊ ＊"

We note that section 4a(g)(ii)(5) of "An Act in relation to the rate of interest and other charges in connection with sales on credit and the lending of money" (Ill. Rev. Stat. 1975, ch. 74, par. 4a(g)(ii)(5)) and section 2.9(5) of the Motor Vehicle Retail Installment Sales Act (Ill. Rev. Stat. 1975, ch. 121½, par. 562.9(5)) are practically identical to section 226.4(a)(5) of Regulation Z (12 C.F.R. §226.4(a)(5) (1978)). Section 2.9(5) of the latter act (Ill. Rev. Stat. 1975, ch. 121½, par. 562.9(5)) was recently construed in *Browder v. Hanley Dawson Cadillac Co.* (1st Dist. 1978), 62 Ill. App. 3d 623, 632-33, 379 N.E.2d 1206. We also note that sections 4a(f)(13) and 4a(g) of the former act (Ill. Rev. Stat. 1975, ch. 74, pars. 4a(f)(13) and 4a(g)) and section 5(16) of the latter act (Ill. Rev. Stat. 1975, ch. 121½, par. 565(16)) contain requirements that disclosures be made "clearly, conspicuously and in meaningful sequence" and that the terms "finance charge" and "annual percentage rate" shall be printed more

conspicuously than other terminology required, which requirements also appear in section 226.6(a) of Regulation Z (12 C.F.R. §226.6(a) (1978)).

We proceed to a discussion of whether the disclosure requirements of section 106(b) of the Truth in Lending Act (15 U.S.C. §1605(b) (1976)) and section 226.4(a)(5) of Regulation Z (12 C.F.R. §226.4(a)(5) (1978)) were met in the instant case.

The objected to portion of the agreement is captioned "INSURANCE AGREEMENT." It is contained in a blocked section on the front side of the agreement and is separate and apart from the balance of the agreement. It provides in print as follows:

> "Property insurance may be required by Bank. Debtor may chose the person through whom the insurance is to be obtained. If such insurance is to be obtained through Bank, the cost for the term of credit will be $_____.
>
> Credit insurance is not required by Bank nor is it a factor in approval of the extension of credit. No credit insurance is to be provided unless the Debtor signs the appropriate authorization below. Group Credit insurance is available for the term of the credit at the following costs:
>
> Credit Life Insurance $____ Credit Disability Insurance $____
>
> | I desire Credit Life and Disability Insurance. | I desire Credit Life Insurance only. | I DO NOT want Credit Life or Disability Insurance. |
> |---|---|---|
>
> _____ _____ _____
> (Date) (Signature) (Date) (Signature) (Date) (Signature)"

In the blank after "Credit Life Insurance" appears the figure "22.81" in script. In the blank after "Credit Disability Insurance" appears the figure "58.18" in script. In the "(Date)" blank under the heading "I desire Credit Life and Disability Insurance" appears the date "9-15-76" in script. It is apparent from the agreement that these blanks were filled in by an agent or employee of the plaintiff, who also placed an "X" in script at the left end of the "(Signature)" blank under the heading "I desire Credit Life and Disability Insurance." Immediately after this "X" appears the signature of defendant.

A review of the balance of the agreement indicates that the agent or employee of the plaintiff filled in these blanks and placed the "X" before defendant signed his name. At the bottom of the agreement appears defendant's address and another "X" in the script of the agent or employee of the plaintiff. The signature of the defendant appears for the second time after this second "X". Immediately above the address and

second signature appears the following statement in print: "Debtors acknowledge receipt of a completed copy of this instrument and disclosure statement prior to consummation of the loan." The portion of the agreement captioned "DISCLOSURE STATEMENT" is in a blocked section which is separate and apart from the balance of the agreement and contains the numerical computations regarding the loan. In this portion of the agreement, the aforementioned insurance premium figures are again separately stated in the script of the agent or employee of the plaintiff, and designated respectively in print as "Credit Life Insurance Premium" and "Credit Disability Insurance Premium." Their sum is then included in the "Amount Financed" figure of $2,080.99.

We find from the foregoing that defendant gave "specific affirmative written indication" (15 U.S.C. §1605(b)(2) (1976)) and "specific dated and separately signed affirmative written indication" (12 C.F.R. §226.4(a)(5)(ii) (1978)) of his desire for credit life and disability insurance after he had received written disclosure of the cost of that insurance. See *In re Dickson* (W.D.N.C. 1977), 432 F. Supp. 752, 759, 762.

Section 106(b)(1) of the Truth in Lending Act (15 U.S.C. §1605(b)(1) (1976)) requires a disclosure that credit insurance is not a factor in the approval by the creditor of the extension of credit to be "clearly disclosed in writing." Section 121(a) of the Act (15 U.S.C. §1631(a)(1976)) requires that the creditor shall disclose "clearly and conspicuously" the information required under the Act in accordance with the regulations of the Board. Section 226.4(a)(5)(i) of Regulation Z (12 C.F.R. §226.4(a)(5)(i) (1978)) requires a disclosure that credit insurance is not required by the creditor to be "clearly and conspicuously disclosed in writing." Section 226.6(a) of Regulation Z (12 C.F.R. §226.6(a) (1978)) requires that the disclosures be made "clearly, conspicuously, in meaningful sequence" except that "finance charge" and "annual percentage rate" shall be printed "more conspicuously than other terminology."

Defendant contends that the term "conspicuous," as used in the Truth in Lending Act (15 U.S.C. §1601 *et seq.* (1976)), should be defined with reference to the Uniform Commercial Code definition of that term. Section 1—201(10) of the Code (Ill. Rev. Stat. 1975, ch. 26, par. 1—201(10)) provides in pertinent part: "Language in the body of a form is 'conspicuous' if it is in larger or other contrasting type or color."

The effect of acceptance of the Uniform Commercial Code definition for purposes of the Truth in Lending Act requires a finding herein that the disclosure "Credit Insurance is not required by Bank nor is it a factor in approval of the extension of credit" in the agreement is not conspicuous, since it is in the same size type as the other language in the body of the agreement. The Uniform Commercial Code definition of the term "conspicuous" was accepted for purposes of the Truth in Lending

Act in *Smith v. Chapman* (W.D. Tex. 1977), 436 F. Supp. 58, 64-65. In *Smith,* a physical damage insurance disclosure was contained on the reverse side of the loan contract in the same size print and type as the rest of the writing on the reverse side.

On the other hand, the Uniform Commercial Code definition of the term "conspicuous" was expressly rejected in *Reed v. Washington Trailer Sales, Inc.* (M.D. Tenn. 1974), 393 F. Supp. 886. The *Reed* court reviewed various disclosure provisions of the Truth in Lending Act and Regulation Z providing expressly or in substance for "conspicuous" disclosures, and concluded that varying standards are applied under the heading of "conspicuous." "The degree of conspicuousness simply varies according to the context of the various disclosure requirements. While it would appear that all disclosures must be 'conspicuous' according to some definition, it is clear that the degree of 'conspicuousness' required relates to the importance or weight assigned to a particular disclosure." (393 F. Supp. 886, 892.) The *Reed* court found that a property insurance disclosure was not required to be in a particular print size, color, or boldness of type to be a "clear, conspicuous, and specific statement" under section 226.4(a)(6) of Regulation Z (12 C.F.R. §226.4(a)(6) (1978)). "[A]ll that is necessary is that the statement 1) convey the necessary information in lucid terms, 2) be located in logical proximity with the property insurance provisions of the contract, and 3) in such a manner so that the customer's attention is drawn to it." 393 F. Supp. 886, 892.

We find the reasoning of the *Reed* court to be persuasive. The disclosure "Credit Insurance is not required by Bank nor is it a factor in approval of the extension of credit" conveys the necessary information in lucid terms; is located in logical proximity with the other credit insurance provisions of the agreement; and is located in such a manner so that the customer's attention is drawn to it. This disclosure is located under the heading "INSURANCE AGREEMENT," which portion of the agreement contains three separate date and three separate signature blanks, which draw the customer's attention to it. Although the property insurance disclosures immediately precede the objected to credit insurance disclosure, their locations do not make the objected to disclosure not conspicuous.

■■ We find that the objected to disclosure was clear and conspicuous under the Truth in Lending Act (15 U.S.C. §§1605(b)(1), 1631(a) (1976)) and Regulation Z (12 C.F.R. §§226.4(a)(5)(i), 226.6(a) (1978)).

For the aforementioned reasons, we hold that the trial court did not err in striking count I of defendant's counterclaim.

Defendant's final contention is that count II of his counterclaim states a cause of action. He argues that a counterclaim for the penalty set forth

in section 9—507(1) of the Uniform Commercial Code (Ill. Rev. Stat. 1975, ch. 26, par. 9—507(1)) may be based upon the defendant's demand for proof by the plaintiff of compliance with section 9—504(3) in a suit by the plaintiff for a deficiency balance in which the plaintiff clearly must prove such compliance anyway.

■■ In a suit for a deficiency balance due under an installment note and security agreement, the plaintiff creditor under section 9—504(3) has the burden of proving proper notice of the sale or disposition. If such notice is not established, plaintiff must rebut the presumption that the value of the collateral was equivalent to the debt on the note and prove the sale of the collateral was commercially reasonable. (*General Foods Corp. v. Hall* (1st Dist. 1976), 39 Ill. App. 3d 147, 153, 349 N.E.2d 573; see *Commercial Discount Corp. v. Bayer* (1st Dist. 1978), 57 Ill. App. 3d 295, 300-01, 372 N.E.2d 926, and *Tauber v. Johnson* (1st Dist. 1972), 8 Ill. App. 3d 789, 793-94, 291 N.E.2d 180.) The bulk of the cases imposing damages under section 9—507(1) have concerned failure by a secured party to follow the requirements of section 9—504(3) (particularly concerning notice of sale to the debtor). (Ill. Ann. Stat., ch. 26, par. 9—507(1), Illinois Code Comment, at 361 (Smith-Hurd 1974).) The Uniform Commercial Code Comment to section 9—507(1) states: "The section further provides for damages where the unreasonable disposition has been concluded, and, in the case of consumer goods, states a minimum recovery." Ill. Ann. Stat., ch. 26, par. 9—507(1), Uniform Commercial Code Comment, at 361 (Smith-Hurd 1974).

A counterclaim must allege facts sufficient to state a cause of action. See *Public Finance Corp. v. Davis* (1976), 66 Ill. 2d 85, 360 N.E.2d 765; *Moroni v. Intrusion-Prepakt, Inc.* (1st Dist. 1960), 24 Ill. App. 2d 534, 541, 165 N.E.2d 346.

■■ In the instant case, the only fact alleged in count II of defendant's counterclaim is that plaintiff repossessed the motor vehicle described in the contract. Count II does not allege any fact regarding the disposition of the Ford Mustang. Count II does not allege any fact regarding notice of the disposition and the commercial reasonableness of the disposition. Defendant states in its brief in this court that neither he nor his counsel have the resources to conduct discovery in this small claim proceeding to find out what the plaintiff did after it took possession of the automobile. Discovery is available to litigants in small claim proceedings by leave of court (Ill. Rev. Stat. 1975, ch. 110A, par. 287), and inability to conduct discovery because of lack of resources does not alter the principle that a counterclaim must allege facts sufficient to state a cause of action.

Since no facts are alleged in count II which could conceivably support a violation of section 9—504(3) of the Uniform Commercial

Code (Ill. Rev. Stat. 1975, ch. 26, par. 9—504(3)), count II of defendant's counterclaim fails to state a cause of action. The trial court did not err in striking count II of defendant's counterclaim.

Accordingly, the order of the circuit court of Cook County striking defendant's counterclaim is affirmed.

Affirmed.

STAMOS, P. J., and DOWNING, J., concur.