STALEY EMPLOYEE CREDIT UNION, Plaintiff-Appellant, *v.* RALPH H. CHRISTIE *et al.*, Defendants-Appellees.

Fourth District   No. 4—82—0394

Opinion filed December 13, 1982.

Welsh, Kehart, Shafter & Hughes, P.C., of Decatur (Charles C. Hughes and A. G. Webber, IV, of counsel), for appellant.

Gregory A. Mattingley, of Brown, Hawkins, Basola & Mattingley, of Decatur, for appellees.

JUSTICE GREEN delivered the opinion of the court:

On October 15, 1981, plaintiff, Staley Employee Credit Union, filed a small claim complaint in the circuit court of Macon County against defendants, Ralph H. and Donna Christie. Plaintiff sought a judgment against defendants on a promissory note for (1) the amount owing on the note after deducting the proceeds of sales of chattels standing as security for the loan, and (2) attorney fees. In opposition, defendants maintained: (1) plaintiff was not entitled to any deficiency judgments because plaintiff had not given them notice of the ultimate

sale of the collateral as required by section 9—504(3) of the Uniform Commercial Code (Ill. Rev. Stat. 1979, ch. 26, par. 9—504(3)); and (2) because of plaintiff's failure to give notice, defendants were entitled to damages under section 9—507(1) of the Code (Ill. Rev. Stat. 1979, ch. 26, par. 9—507(1)). The trial court agreed with defendants and entered judgment on May 26, 1982, denying plaintiff the recovery it sought and awarding defendants damages in the sum of $2,647.38 and costs. We affirm.

On appeal, plaintiff maintains it gave proper notice of sale and, even if it did not do so, it should not be denied the benefit of a deficiency judgment because a very satisfactory price was obtained on the sale, and defendants were not damaged by lack of notice.

■ We examine first the question of the sufficiency of the notice of sale because, unless plaintiff failed in that respect, it was admittedly entitled to prevail. Section 9—504(3) provides that a creditor may sell collateral by "public or private proceedings" at times, places and on terms determined by the creditor as long as they are "commercially reasonable." The section further states that, unless the collateral is of a type not applicable here,

> "reasonable notification of the time and place *of any public sale* or reasonable notification of the time after which *any private sale* or other intended disposition is to be made *shall be sent by the secured party to the debtor,* if he has not signed after default a statement renouncing or modifying his right to notification of sale. In the case of consumer goods no other notification need be sent." (Emphasis added.) Ill. Rev. Stat. 1979, ch. 26, par. 9—504(3).

Originally, plaintiff proposed to sell the collateral at its place of business on June 17, 1981, at 9 a.m. By the terms of the notice, bidders were permitted to submit bids in writing to plaintiff at its office on or before that date. These bids were not to be sealed, and persons appearing at the sale were to be permitted to bid competitively against those bids. The sale was to be a public sale within the meaning of section 9—504(3) of the Code. (See Ill. Ann. Stat., ch. 26, par. 9—504(3), Illinois Code Comment, at 342 (Smith-Hurd 1974); 47 Am. Jur. 2d *Judicial Sales* sec. 103 (1969).) At the time of the sale, only one bid was submitted for each of the two chattels standing as collateral, $500 for a truck and $3,000 for a Cougar automobile. Because of the low price of these bids, plaintiff rejected them. Defendants did not appear at this sale, nor did they contact plaintiff's agents concerning the sale. Plaintiff then posted notices on the bulletin boards of the A. E. Staley Manufacturing Company plant at Decatur requesting fur-

ther bids for the vehicles and had similar notices published in the *Decatur Herald and Review* and the A. E. Staley newspaper. No further notices were sent to defendants. On June 29, 1981, a bid of $3,850 was received for the Cougar automobile, and it was accepted by plaintiff. On June 30, 1981, a bid of $1,200 was received for the truck and accepted. Although the manner of receiving bids for these later sales was not made entirely clear by the stipulated statement of the testimony, the sale appeared to be private in nature.

We passed upon a somewhat similar question of the adequacy of notice of sale required by section 9—504(3) in *Spillers v. First National Bank* (1980), 81 Ill. App. 3d 199, 400 N.E.2d 1057. There, a creditor repossessed collateral and later notified the debtor that it had a bid of $15,000 for a crane, which was one of the items of collateral, and stated the crane would be sold 10 days after the debtor's receipt of the notice. The debtor then received an offer of $16,000 for the crane through a corporation owned by him. The creditor responded by imposing three conditions upon the sale for $16,000. The debtor did not respond, and the creditor then made the $15,000 sale to the original prospective purchaser. No notice was given to the debtor of the creditor's subsequent intention to make the sale originally proposed. We held the notice to be faulty, reasoning that the sale finally made was not the same one originally contemplated. We stated, "The word 'any' as used in section 9—504(3), when referring to private sales, has the clear meaning of 'all and every.' " 81 Ill. App. 3d 199, 204, 400 N.E.2d 1057, 1060.

Here, the evidence indicates the plaintiff was very careful to see that the best possible sale of the chattels was made. Acceptance of the bids at the original public sale for which full notice was given would appear to have been commercially reasonable. However, plaintiff wisely chose not to accept the bids but to attempt to do better, and they did so. The evidence indicated that the bids finally accepted were very good ones. Nevertheless, the sales eventually made were not the sale for which defendants were given notice. Notice of a public sale to take place on June 17, 1981, at 9 a.m. at a particular place is not notice "of the time after which a private sale or other intended disposition is to be made." Even if we consider the sales actually made to have been public in nature, the notice requirement is not cured. Notification of a public sale to take place on June 17, 1981, at 9 a.m. is not notice "of the time and place" of a public sale occurring on June 29 or June 30, 1981.

Plaintiff's argument that the notice given here was reasonable and adequate finds some support in the case of *Contois Motor Co. v.*

*Saltz* (1977), 198 Neb. 455, 253 N.W.2d 290, and *Bondurant v. Beard Equipment Co.* (Fla. App. 1977), 345 So. 2d 806. Plaintiff's good faith and effective effort to maximize the amount realized for the collateral, and defendants' lack of interest in the sale and apparent lack of injury by not receiving further notice, create the temptation to uphold the notice given. But, the purpose of the Code, which enables a debtor to protect his interest in the property by finding a buyer or by being present to bid (*Lake Shore National Bank v. McCann* (1979), 78 Ill. App. 3d 580, 396 N.E.2d 1301), would not be protected thereby.

■ Having held the notice to defendants to have been insufficient, we turn to the question of the consequences of that insufficiency. In *Spillers* and *Stensel v. Stensel* (1978), 63 Ill. App. 3d 639, 380 N.E.2d 526, we held that the failure to give proper notice of sale barred entry of a deficiency judgment. We are aware that our holding in those cases is inconsistent with that in decisions of the appellate court of this State. (*National Boulevard Bank v. Jackson* (1981), 92 Ill. App. 3d 928, 416 N.E.2d 358; *Lake Shore National Bank*; *National Republic Bank v. Proctor* (1978), 66 Ill. App. 3d 534, 383 N.E.2d 1310; *Commercial Discount Corp. v. Bayer* (1978), 57 Ill. App. 3d 295, 372 N.E.2d 926.) In *Lake Shore National Bank*, the court deemed the proper rule to be that a failure to give proper notice raises a presumption that the value of the secured collateral was equivalent to the debt. The creditor then had the burden of rebutting that presumption and proving the sale to have been commercially reasonable. That is a sanction that might work satisfactorily in many cases, but value is a relatively conjectural matter. A debtor with proper notice may, on occasion, be able to produce a buyer who will give more for a chattel than its value would appear to be. The requirement to "send" notice to a debtor is not difficult to comply with. We must reject plaintiff's request to overrule *Spillers* and *Stensel*.

In *Spillers*, we held the sale in question to have been made without proper notice and also to have been unreasonable from a commercial standpoint. We noted the interrelationship of the two concepts but held that the failure of notice was, of itself, sufficient to require denial of a deficiency judgment. Thus, the fact that the sales here were fully reasonable from every commercial aspect except that of notice does not give life to plaintiff's claim for a deficiency judgment.

In *Spillers*, the debtor sought compensation for actual damages under section 9—507(1) of the Code (Ill. Rev. Stat. 1977, ch. 26, par. 9—507(1)). That section states that a debtor may recover "any loss caused by a failure to comply" with article 9 of the Code. We held that, because the deficiency had been wiped out, the damages would

be only the amount that the proper valuation of the chattel was in excess of the total debt. Had defendants been limited to actual damages here, that rule would have applied. However, the parties agree that the collateral here was "consumer goods" within the meaning of section 9—507(1) which states that, if the requirements of article 9 of the Code have not been complied with and "the collateral is consumer goods," the debtor has a right to recover at least an amount of the credit charge plus 10% of the principal of the debt or "the time price differential plus 10% of the cash price." Plaintiff does not dispute that, if defendants were entitled to recover under this provision, the damages were accurately computed. In *Spillers*, we held the remedy of section 9—507(1) to be cumulative to the remedy of denial of deficiency judgment although the debtor could only have an actual recovery when the actual value of the collateral exceeded the total debt. Here, where the minimum recovery is stated as a matter of right, the portion of the deficiency which would have existed even if full value were obtained for the collateral cannot be used to diminish the recovery by the debtor.

Our affirmance is for the reasons stated.

Affirmed.

MILLS and LEWIS, JJ., concur.