FIRST GALESBURG NATIONAL BANK & TRUST COMPANY, Plaintiff-Appellant, *v.* LOUIS JOANNIDES *et al.*, Defendants-Appellees.

Third District   No. 82—606

Opinion filed August 4, 1983.

Stephen R. Olson, of Lucas, Brown & McDonald, of Galesburg, for appellant.

Barry M. Barash, of Barash, Stoerzbach & Henson, of Galesburg, for appellees.

JUSTICE BARRY delivered the opinion of the court:

Plaintiff, First Galesburg National Bank and Trust Company (Bank), appeals from an adverse judgment on its claim that defendants, Louis and Jennie Joannides, owed the Bank in excess of $102,000 on a guaranty signed by them to keep their son's automobile dealership in business. The Joannideses presented several affirmative defenses, including that the Bank disposed of the secured collateral in a commercially unreasonable manner and without notice to the guarantors, and that the terms of the guaranty had been modified orally prior to the defendants' signing of the guaranty instrument. Following a jury trial in the circuit court of Knox County, a general verdict was returned in the defendants' favor. On appeal the Bank raises several issues challenging the jury's verdict, only one of which we need address, because we hold that the Bank's failure to comply with the notice requirement of section 9—504(3) of the Illinois Uniform Commercial Code (Ill. Rev. Stat. 1981, ch. 26, par. 9—504(3)) barred it from recovering any deficiency from the defendants.

The relevant facts in this appeal may be stated simply. The defendants' son, Tim Joannides, was the owner and president of a corporation known as "Town & Country Dodge Co.," a new and used car dealership located in Galesburg, Illinois. Plaintiff Bank financed the acquisition of new cars with a floor plan arrangement. The floor plan loan had a credit limit of $425,000. In consideration for additional security interests on the used cars, parts and equipment, Town & Country was given an over-all credit line limit at plaintiff Bank in the amount of $600,000. In the latter part of 1979 and early 1980, the dealership was having financial problems and the Bank began pressing Tim Joannides to move his floor plan elsewhere. Joannides was unsuccessful in his endeavor to do so and ultimately struck an agreement with the Bank whereby the Bank would continue to provide financing to keep Town & Country afloat if Tim would get his parents to sign a $50,000 guaranty. Tim's parents, the defendants, were residing in Florida, and upon learning of their son's predicament, signed the guaranty on February 19, 1980, and returned it to Tim, who presented it to the Bank. In addition to the principal guaranty of $50,000, the terms of the signed instrument extended to interest on "all loans and/or advances hereunder."

Town & Country's financial troubles were still far from being resolved, however, and in May 1981, the Bank finally closed the business and forced it into bankruptcy. Between May 8 and May 23, 1981, the Bank had sold seven of the repossessed vehicles. On May 23, the Bank sent the defendants a letter stating:

"On Friday, May 8, 1981 the doors of Town and Country Dodge were closed to the public and subsequent to that the business has been placed in bankruptcy.

The intent of this letter is to notify you that it now appears a loss will be realized and the bank will be forced to ask you to honor your *guarantee of $50,000* dated February 19, 1980.

We are available at your convenience to discuss this situation if you have any questions." (Emphasis added.)

The defendants did not respond to the letter. The Bank proceeded to liquidate the remainder of the repossessed property and, after applying the proceeds to the balance due the Bank on Town & Country's loans, arrived at a deficiency balance of $161,628.79 in principal and $52,829.19 in unpaid interest as of the date of trial.

In their suit against the guarantors, the Bank sought $102,829.19, representing the $50,000 guaranty plus $52,829.19 in interest. At trial, Tim Joannides testified that Mr. Lary Wright and Mr. James Anderson, Bank vice-president and assistant vice-president, respectively, had orally agreed to release the defendants from their $50,000 guaranty if Town & Country succeeded in reducing its debts on the floor plan loan to within $425,000 and maintaining it at or below that line for a satisfactory period of time. The oral agreement was purported to have been entered into in January of 1980. Although the balance due on the floor plan loan was under the stated figure by at least August of 1980, Tim Joannides' efforts to get the Bank to honor the alleged agreement and release his parents were unsuccessful. Both Mr. Wright and Mr. Anderson denied having orally agreed with Tim to release the defendants on any terms.

Although the record in this case is replete with facts and figures sufficient to boggle the proverbial Philadelphia lawyer, they are largely unnecessary to the disposition of this appeal. The clue to this case lies in the May 23, 1981, letter sent by the Bank to Mr. & Mrs. Joannides. The Bank does not deny that no other communication was sent by it to the defendants prior to the institution of this lawsuit. It is not what the letter says, but what it does *not* say, this is relevant here.

■ Section 9—504(3) of the Uniform Commercial Code (Ill. Rev. Stat. 1981, ch. 26, par. 9—504(3)) requires that the secured party—the Bank—send "reasonable notification of the time and place of any public sale or reasonable notification of the time *after* which any private sale or other intended disposition is to be made" (emphasis added) to the debtor—in this case, the Joannideses as guarantors. (See *Commercial Discount Corp. v. Bayer* (1978), 57 Ill. App. 3d 295, 372 N.E.2d

926.) Failure to comply with the notice requirement bars the secured party from recovering a deficiency following the sale of the repossessed collateral. *State National Bank v. Northwest Dodge, Inc.* (1982), 108 Ill. App. 3d 376, 438 N.E.2d 1345; *Stensel v. Stensel* (1978), 63 Ill. App. 3d 639, 380 N.E.2d 526.

■ The Bank's May 23 letter can hardly be construed as reasonable notification of any intended disposition of the repossessed collateral. No mention is made that any sale, public or private, did, or may in the future, take place. The Joannideses were thus not given an opportunity to attend any sale or bid on any of the vehicles had they desired to do so. The Bank will not be heard to complain that, in fact, the Joannideses knew or should have known by May 1 or May 2, 1981, that their son's business was closed down and that the repossessed collateral would be sold thereafter. The notice provision of section 9—504(3) is clearly mandatory, rather than directory. *State National Bank v. Northwest Dodge, Inc.*

The Bank urges that we reject the "punitive" absolute bar theory in favor of a "remedial" rebuttable presumption approach which was followed in *National Boulevard Bank v. Jackson* (1981), 92 Ill. App. 3d 928, 416 N.E.2d 356. The latter theory was applied by the trial court in this case and the jury was instructed accordingly.

Recognizing that there is a difference in opinion within the Illinois Appellate Court (see *State National Bank v. Northwest Dodge, Inc.* (summarizing the case law applying both theories in Illinois)), we remain convinced that the absolute bar approach, requiring strict compliance with the statutory notice of provisions of section 9—504(3), is the better-reasoned of the two. See *Morris Plan Co. v. Johnson* (1971), 133 Ill. App. 2d 717, 271 N.E.2d 404.

Under the rebuttable presumption approach "[f]ailure to provide adequate notice does not *** absolutely bar a deficiency judgment, but raises the presumption that the value of the secured collateral is equal to the amount of the debt. In order to obtain a deficiency judgment, the creditor has the burden of rebutting the presumption and of proving that the amount collected from the sale was commercially reasonable." *National Boulevard Bank v. Jackson* (1981), 92 Ill. App. 3d 928, 931, 416 N.E.2d 356, 360-61 (citing *Tauber v. Johnson* (1972), 8 Ill. App. 3d 789, 291 N.E.2d 180; *General Foods Corp. v. Hall* (1976), 39 Ill. App. 3d 147, 349 N.E.2d 573; *National Republic Bank v. Proctor* (1978), 66 Ill. App. 3d 534, 383 N.E.2d 1310; *Chicago City Bank & Trust Co. v. Wilson* (1980), 86 Ill. App. 3d 452, 407 N.E.2d 964).

■ We find this position unacceptable because the Bank, by not

complying with the notification requirement, places the guarantors, in this case, "in the difficult position of refuting the *** [Bank's] evidence that the sale[s] [they] did not even attend [were] commercially reasonable." (*State National Bank v. Northwest Dodge, Inc.* (1982), 108 Ill. App. 3d 376, 381, 438 N.E.2d 1345, 1349.) In our view, the Bank's failure to properly notify the Joannideses prior to conducting sales of the repossessed vehicles and other collateral tainted the sales and extinguished the Joannideses' obligations on the guaranty. Whether the Joannideses might or might not have elected to attend the sales invites unnecessary speculation, since the Bank failed to send a notice of proposed sales in the first place. Furthermore, the amount collected at the sales merely mitigated the Bank's losses, and whether or not the amounts collected were commercially reasonable does not cure the lack of proper notice.

Finally, we are unpersuaded by the Bank's argument that the Joannideses were adequately protected from the Bank's failure to comply with its duty to notify by section 9—507(1) which permits a debtor to recover losses incurred as a result of the Bank's noncompliance. This argument was specifically rejected in *State National Bank v. Northwest Dodge, Inc.*, wherein the court quoted with approval from *Wilmington Trust Co. v. Conner* (Del. 1980), 415 A.2d 773, 780:

> " 'The burdens placed on the creditor under the Code are minimal, while the results of his noncompliance may be very onerous to the debtor. *** We are unable to see any unfairness in protecting the debtor's rights to the exclusion of those of the creditor when the creditor has been placed in such a high degree of control over the relationship and carries such a small burden in order to gain the advantages of the Statute.' [Citation.] See also *Spillers v. First National Bank* (1980), 81 Ill. App. 3d 199, 400 N.E.2d 1057 (debtor's right to damages is cumulative to the barring of a deficiency)." 108 Ill. App. 3d 376, 381, 438 N.E.2d 1345, 1349.

■ In sum, we hold that the defendants were entitled to judgment as a matter of law on grounds of undisputed evidence that the plaintiff Bank failed to comply with the notice requirement of section 9—504(3) of the Uniform Commercial Code. The remainder of the Bank's issues in this appeal, raising questions about the admissibility of certain evidence and the weight of evidence to support the jury's verdict, are obviated by our holding. Nor need we speculate upon whether the jury's verdict was based upon a finding that the Bank had failed to establish that the amount it collected from sales of the collateral was commercially reasonable or whether the jury found for

the defendants on one or more other bases.

For the foregoing reasons, we affirm the judgment of the circuit court of Knox County.

Affirmed.

ALLOY and SCOTT, JJ., concur.