FORD MOTOR CREDIT COMPANY, Plaintiff-Appellee, *v.* DENNIS E. JACKSON, Defendant-Appellant.

Third District   No. 3—83—0756

Opinion filed July 25, 1984.

James E. Swanson, of Peoria, for appellant.

Richard N. Molchan, Timothy L. Bertschy, and D. Kevin Sommer, all of Heyl, Royster, Voelker & Allen, of Peoria, for appellee.

JUSTICE STOUDER delivered the opinion of the court:

The defendant, Dennis E. Jackson, appeals from an order awarding damages to the plaintiff, Ford Motor Credit Company. The instant case arises from the sale of a semitractor. The defendant purchased the truck for $13,500 from Bush-Holloway Ford (hereafter Bush). Bush assigned the contract to the plaintiff. The unpaid balance on the truck was $11,108.

In November of 1980, the defendant was unable to make further payments on the truck. He voluntarily returned the truck to Bush. Bush was insolvent at the time. On November 12, 1980, the plaintiff sent a notice to the defendant that if the truck was not redeemed, it would be sold at a private sale on or after November 22, 1980.

The truck remained on Bush's premises until it was sold on June 24, 1981, to Don's Truck Sales. Don's Truck Sales, one of three bidders for the truck, submitted the highest bid at $4,500. No additional notice was given the defendant of the June 24 sale. At the time of the sale, Bush's inventory was being liquidated.

The plaintiff then filed an action for damages, seeking to recover the deficiency between the amount owed by the defendant and the amount realized from the sale of the truck. Following a bench trial, the court entered judgment for the plaintiff in the sum of $8,939.10 plus costs. The defendant appeals from this judgment, arguing that the sale of the semitractor did not comply with the statutory requirements of the Uniform Commercial Code (hereafter the Code).

The sale of collateral following default on a secured loan is governed by section 9—504 of the Uniform Commercial Code—Secured Transactions. (Ill. Rev. Stat. 1983, ch. 26, par. 9—504.) Section 9—504(3) provides that except under conditions not relevant here, where collateral is sold in a private sale, the secured party must give the debtor "reasonable notification of the time after which any private sale *** is to be made." This section further provides that every aspect of the sale must be commercially reasonable.

The defendant asserts initially that the notice of sale was insufficient under section 9—504(3) because it did not inform him of the sale on June 24. The defendant argues that the statutory language "any private sale" means that notice must be given of each and every sale. In support of his argument the defendant relies on the decisions in *Spillers v. First National Bank* (1980), 81 Ill. App. 3d 199, 400 N.E.2d 1057, and *Staley Employee Credit Union v. Christie* (1982), 111 Ill. App. 3d 165, 443 N.E.2d 731. The court in *Spillers* and *Staley* interpreted "any private sale" to mean "all and every sale."

However, the decisions in both *Staley* and *Spillers* are distinguishable on the facts. In *Staley,* the collateral was originally offered at a public sale for which the debtor received notice. The debtor did not receive notice of the subsequent private sale at which the collateral was actually sold. In *Spillers,* the two items held for collateral were sold at two separate private sales. Additionally, the debtor made an offer on one of the items after the date of the notice but before the actual sale. In interpreting the *Spillers* decision, the *Staley* court stated: "We held the notice to be faulty, reasoning that the sale finally made was not the same one originally contemplated." *Staley Employee Credit Union v. Christie* (1982), 111 Ill. App. 3d 165, 167, 443 N.E.2d 731, 733, citing *Spillers v. First National Bank* (1980), 81 Ill. App. 3d 199, 204, 400 N.E.2d 1057, 1060.

In the instant case, the sale, although held six months after the notice, was the same one originally contemplated. There was not a second sale of collateral or an intervening offer by the defendant. In the absence of these factors, we interpret section 9—504(3) as requiring only one notice of the date after which one private sale of collateral will be held. We therefore find, on the facts of the instant case, that the notice to the defendant was sufficient.

The defendant also contends that the sale was not commercially reasonable as required by section 9—504(3). We agree.

Section 9—504(3) requires that every aspect of the sale be commercially reasonable, including the method, manner, time, place and terms. Whether a sale is commercially reasonable is a question for the

trier of fact, and its decision will not be reversed unless contrary to the manifest weight of the evidence. *Spillers v. First National Bank* (1980), 81 Ill. App. 3d 199, 400 N.E.2d 1057.

The defendant argues that it was not commercially reasonable for the plaintiff to sell the truck at wholesale level when the defendant purchased it at retail level. The defendant relies on the decision in the second appeal of *Spillers v. First National Bank* (1982), 109 Ill. App. 3d 1100, 441 N.E.2d 872. This *Spillers'* court was required to determine the reasonableness of a sale at wholesale level. The court concluded that the relevant factors were the methods of sale available to the creditor, the condition of the collateral, and the price the creditor should have obtained under all the circumstances.

In the instant case, the creditor, Ford Motor Credit Company, had retail and wholesale outlets available to it through its various dealers. The evidence at trial demonstrated that no repairs were necessary to the truck before its sale. The price the creditor obtained by selling wholesale was less than half of the amount still owed by the defendant on the truck. Finally, the truck was sold through a dealership which was in the process of liquidating its entire inventory.

We find that the trial court's decision that the method of sale was commercially reasonable is contrary to the manifest weight of the evidence.

█ Having determined that the sale was commercially unreasonable, we next address the issue of what remedy is available to the defendant. The only remedy provided a debtor under the Code is an action for damages under section 9—507. (Ill. Rev. Stat 1983, ch. 26, par. 9—507.) Every Illinois court which has found a commercially unreasonable sale has also found inadequate notice. Thus, the question of a debtor's remedy in an action by a creditor for a deficiency judgment where commercial unreasonableness only is shown is one of first impression in Illinois.

In resolving this question, we first consider whether the remedy for commercial unreasonableness should be the same as the remedy for inadequate notice. The courts of Illinois are split as to the proper remedy where a creditor seeking a deficiency judgment fails to show adequate notice. Several courts follow the rebuttable presumption approach, in which the failure to provide adequate notice raises the presumption that the value of the collateral is equal to the remaining debt. (*National Boulevard Bank v. Jackson* (1981), 92 Ill. App. 3d 928, 416 N.E.2d 358.) This court, on the other hand, recently held that a failure to provide notice results in an absolute bar to recovery of the deficiency judgment. *First Galesburg National Bank & Trust*

*Co. v. Joannides* (1983), 116 Ill. App. 3d 810, 452 N.E.2d 787, *appeal allowed* (1983), 96 Ill. 2d 559.

Thus, by analogy to lack of notice, one remedy for failure to conduct a commercially reasonable sale would be a bar to the creditor's recovery of the deficiency. However, as we noted in *Joannides*, the lack of notice necessitates an absolute bar because it places a debtor in the position of challenging the creditor's evidence of commercial reasonableness of the sale without ever attending the sale.

The same dilemma is not created where the creditor fails to conduct a commercially reasonable sale. A debtor who knows of the sale has the opportunity to observe the sale, thereby enabling the debtor to challenge its reasonableness in an action for the deficiency. We conclude, therefore, that where a sale of collateral is found commercially unreasonable, a better result follows from the rebuttable presumption approach. Under this approach, a creditor's failure to conduct a commercially reasonable sale creates a rebuttable presumption that the value of the collateral is equal to the amount of the debt which the creditor seeks to recover in the deficiency action. A creditor is then required to prove that the value of the collateral is equivalent to its sale price before the creditor may recover damages. A debtor may present evidence demonstrating that the value of the collateral is equal to the debt he still owes and that, but for the commercial unreasonableness of the sale, the proceeds from the collateral would have satisfied the debt remaining after the sale.

Having found that the sale of the defendant's semitractor was commercially unreasonable, we accordingly reverse the judgment of the circuit court of Peoria County and remand the cause for further proceedings consistent with this decision.

Reversed and remanded.

SCOTT and BARRY, JJ., concur.