WILLIAM WILLARD *et al.*, Plaintiffs-Appellants, v. NORTHWEST NATIONAL BANK OF CHICAGO *et al.*, Defendants-Appellees.

First District (5th Division)   No. 83—1532

Opinion filed September 27, 1985.—Rehearing denied November 6, 1985.

Jeffrey Strange, of Northbrook, for appellants.

Earl Weiss, of Levin & Rosen, Ltd., of Skokie, for appellee Donald Weidemann.

David A. Kallick, of Hurley & Kallick, Ltd., of Northbrook, for appellee Northwest National Bank of Chicago.

JUSTICE LORENZ delivered the opinion of the court:

This is an appeal from three orders which disposed of consolidated actions. Plaintiffs William and Pauline Willard filed their complaint against Northwest National Bank seeking to void the bank's sale of their residence; later, Donald Wiedemann filed a petition for forcible

detainer against the Willards, and the circuit court consolidated the actions. The Willards appeal, first, from an order dismissing their complaint for failure to state a cause of action against the bank, second, from the entry of summary judgment in favor of Wiedemann based on the prior dismissal, and third, from the award of possession to Wiedemann. Facts pertinent to our disposition follow.

In 1972, William Willard conveyed his residence into a land trust, naming Northwest National Bank as trustee and himself as beneficiary. On the same day, he assigned his beneficial interest to Northwest as security for a loan of $10,000. Although William and Pauline had been married for three years, Pauline Willard did not sign the deed in trust, nor the assignment, nor has she since signed any document relating to the property or the trust. By 1978, William owed Northwest more than $50,000, and the full amount was secured by an assignment of the beneficial interest in the trust. In 1979, William defaulted on the loan and sued Northwest for usury.

In November of 1981, Northwest notified William that on December 15, 1981, it would sell the assignment of beneficial interest pursuant to section 9—504 of the Uniform Commercial Code. William filed a motion in the usury case seeking to enjoin the sale, but after a hearing on December 14, the trial court denied the motion for a preliminary injunction. William filed a notice of appeal, and on December 15, 1981, the appellate court stayed the sale. However, the appellate court vacated its stay on January 11, 1982. On January 22, Northwest sold the beneficial interest in the trust to Norman Oyen for $72,000. Oyen, as beneficiary, directed Northwest, as trustee, to convey the property from the trust; later, Oyen conveyed the property to Robert Krumlauf, and Krumlauf conveyed it to Wiedemann.

In February of 1982, William Willard filed for protection in bankruptcy. The Willards filed the instant cause in April of 1982. On June 9, Wiedemann served a demand for possession, and the next day, Wiedemann filed his forcible detainer action. In September, the bankruptcy court modified its stay so as to permit the forcible detainer action to proceed. As noted earlier, the circuit court consolidated the forcible detainer into this case.

The Willards alleged in counts I and II of their complaint that Northwest was a fiduciary with respect to William Willard, and that Northwest breached its duty of loyalty. Count III recited that Northwest failed to notify William of the "January 27 [sic], 1982" sale, in violation of section 9—504 of the Uniform Commercial Code. The Willards stated in count IV that Pauline Willard had not signed the deed in trust, and so the trust, the assignments of beneficial interest, and

the sale were void by virtue of Pauline's homestead right.

In its motion to dismiss, Northwest stated: that the complaint failed to allege facts which would establish that Northwest had a fiduciary duty; that under Public Act 82—891, Northwest did not breach any fiduciary duty; that Northwest fully complied with the Uniform Commercial Code in conducting the sale of the beneficial interest; that Pauline never held title to the property and so had no homestead right; that the Willards were not entitled to an injunction because Northwest no longer had any interest in the property; and that the Willards failed to allege damages.

On March 24, 1983, the trial court held that the Willards failed to state a cause of action, and dismissed Northwest from the case. The order specified that "there was no violation" of section 9—504 of the Uniform Commercial Code, and that Pauline Willard "had no Homestead right in the property." On April 12, the trial court granted Wiedemann's motion for summary judgment against the Willards based on the prior dismissal. After a hearing on June 13, 1983, the trial court awarded possession to Wiedemann. The Willards appeal.

Opinion

Initially, we observe that careless practice has unnecessarily complicated this case. Defendant Northwest failed to specify whether its motion to dismiss was brought under section 2—615 or section 2—619 of the Code of Civil Procedure. The differences between the two sections are important: section 2—615 is limited to the pleadings, whereas section 2—619 allows for the consideration of affirmative matters which would defeat a claim. (See Ill. Rev. Stat. 1983, ch. 110, pars. 2—615 and 2—619.) We have criticized joint analysis of these sections in the past (see *Davis v. Weiskopf* (1982), 108 Ill. App. 3d 505, 439 N.E.2d 60, and cases cited therein), and some of the reasons for our criticism appear here. The trial court considered factual matters in deciding the motion, but the order of dismissal purports to find that plaintiffs failed to state a cause of action. As a result, the parties reargue every argument raised below as if it were dispositive. Furthermore, much of the factual matter was improper even under section 2—619. Few of the facts appear in affidavits as required; instead, the assertions and counterassertions of the attorneys are treated as fact. In order to decide the merits of this appeal, we have reduced the briefs and record to their essentials, and have applied principles appropriate to the procedural posture of the case.

A motion to dismiss accepts as true all well-pleaded facts, and should be granted only where "it clearly appears that no set of

facts can be proved which will entitle plaintiffs to recover." (*Fitzgerald v. Chicago Title & Trust Co.* (1978), 72 Ill. 2d 179, 187, 380 N.E.2d 790.) We construe pleadings liberally to see that substantial justice is done between the parties. *People ex rel. Scott v. College Hills Corp.* (1982), 91 Ill. 2d 138, 145, 435 N.E.2d 463.

■ Plaintiff William Willard first contends that he stated a cause of action for breach of fiduciary duty in counts I and II of his complaint. We agree that plaintiff stated a cause of action under *Home Federal Savings & Loan Association v. Zarkin* (1982), 89 Ill. 2d 232, 432 N.E.2d 841. However, any cause of action for breach of fiduciary duty under these circumstances is barred by Public Act 82—891 (the Act). (Ill. Rev. Stat. 1983, ch. 148, pars. 81 through 84.) The Act provides that the trustee of a land trust shall not be considered to have breached any fiduciary duty by dealing with the trust property as a creditor. (Ill. Rev. Stat. 1983, ch. 148, pars. 82 through 84.) Accordingly, we affirm the dismissal of counts I and II of plaintiff's complaint.

■ Plaintiff contends that the Act is unconstitutional because it retroactively destroys a vested right and because it amounts to special legislation. In *Sanelli v. Glenview State Bank* (1985), 108 Ill. 2d 1, our supreme court examined Public Act 82—891, and held that retroactive application was constitutional. We consider *Sanelli* to be dispositive of plaintiff's arguments concerning retroactivity.

■ ■ With respect to special legislation, our supreme court has set forth this standard: " 'If there is a reasonable basis for differentiating between the class to which the law is applicable and the class to which it is not, the General Assembly may constitutionally classify persons and objects for the purpose of legislative regulation or control, and may pass laws applicable only to such persons or objects.' " (*Illinois Coal Operators Association v. Pollution Control Board* (1974), 59 Ill. 2d 305, 311, 319 N.E.2d 782, quoting *People ex rel. County of Du Page v. Smith* (1961), 21 Ill. 2d 572, 578, 173 N.E.2d 485.) The legislature found that land trustees frequently loan money to their beneficiaries, accepting the trust property as security, and that land trustees would be encouraged to make such loans if they were free from fiduciary duties. (Ill. Rev. Stat. 1983, ch. 148, par. 81.) We cannot say that this is an unreasonable basis for treating land trustees as a separate class, and we conclude that the statute is constitutional.

Plaintiff contends that count III of his complaint stated a cause of action for violation of the Uniform Commercial Code. He argues that section 9—504(3) of the Code imposed a duty upon defendant North-

west to furnish reasonable notice of the January 22 sale of collateral. Plaintiff admits that he received notice of the December 15 date, but he maintains that Northwest was required to notify him of the new date of sale after the appellate stay was vacated. Defendant Northwest responds that notice of the December 15 date was adequate because that notice warned, "The bank shall have the right to adjourn the sale before, during or after commencement of the bidding." Defendant also argues that plaintiff failed to allege any injury from the manner in which the sale was conducted, and would not be entitled to relief in any case, because the sale was conducted in a commercially reasonable manner.

Section 9—504(3) of the Uniform Commercial Code requires the secured party to send "reasonable notification of the time and place of any public sale" to the debtor. (Ill. Rev. Stat. 1981, ch. 26, par. 9—504(3).) "The purpose of the requirement of 'reasonable notification' is threefold: (1) it gives the debtor the opportunity to exercise his redemption rights under section 9—506 [citation]; (2) it affords the debtor an opportunity to seek out buyers for the collateral [citation]; and (3) it allows the debtor to oversee every aspect of the disposition, thus maximizing the probability that a fair sale price will be obtained [citation]. Any aspect of the notice that is contrary to these purposes necessarily prevents it from being 'reasonable notification.'" (*Wilmington Trust Co. v. Conner* (Del. 1980), 415 A.2d 773, 776.) Ordinarily, the reasonableness of notice is a fact question. (See *Baber v. Williams Ford Co.* (1965), 239 Ark. 1054, 396 S.W.2d 302; *Bondurant v. Beard Equipment Co.* (Fla. App. 1977), 345 So. 2d 806.) In order to grant the instant dismissal, the trial court must have concluded, as a matter of law, that defendant's notice of the December 15 date constituted reasonable notification of the sale which took place on January 22. Such a conclusion is contrary to the case law, and we hold that the trial court erred in dismissing plaintiff's cause of action based on section 9—504(3) of the Uniform Commercial Code.

In *Spillers v. First National Bank* (1980), 81 Ill. App. 3d 199, 400 N.E.2d 1057, this court held that a notice of sale which specified a date in March was defective as to a sale which actually took place in April. The *Spillers* court observed that knowledge of an impending sale is insufficient; the secured party must notify the debtor of "all and every" proposed sale date. (*Spillers v. First National Bank* (1980), 81 Ill. App. 3d 199, 204-05, 400 N.E.2d 1057; see also *Staley Employee Credit Union v. Christie* (1982), 111 Ill. App. 3d 165, 443 N.E.2d 731.) Courts in other jurisdictions have reached essentially the same result. See *First Alabama Bank v. Parsons* (Ala. Civ. App.

1980), 390 S. 2d 640; *Peoples-Merchants Trust Co. v. Dosis* (Ohio App. 1980), 38 U.C.C. Rep. Serv. (Callaghan) 1084.

■■■ Defendant's reliance on *First National Bank v. Kizzier* (1979), 202 Neb. 369, 275 N.W.2d 600, is misplaced. *Kizzier* involved notice of a date after which a private sale would be held; by contrast, the notice in this case purported to be notice of a public sale. Section 9—504(3) distinguishes between private and public sales, authorizing notice of the date "after which" a private sale will be held, but requiring notice of the specific date, time and place of a public sale. (Ill. Rev. Stat. 1981, ch. 26, par. 9—504(3); see *Ford Motor Credit Co. v. Jackson* (1984), 126 Ill. App. 3d 124, 466 N.E.2d 1330.) Moreover, *Kizzier* was decided on the facts, whereas the reasonableness of notice in this case was decided on the pleadings.

■■■ We reject defendant's argument that the notice was sufficient because it recited that the sale could be adjourned. If we accepted this argument, we would enable creditors, simply by postponing sales, to shift the burden to debtors to inquire when and where sales would be held. Knowledge of the time and place of the sale resides with the creditor, the notice requirement is not an onerous burden and the Code properly places the burden on the creditor. (*Peoples-Merchants Trust Co. v. Dosis* (Ohio App. 1980), 38 U.C.C. Rep. Serv. (Callaghan) 1084, 1088.) Although a secured party may retain the right to adjourn a public sale, we hold that adjournment does not relieve the creditor of the duty to notify the debtor of the new sale date.

■■■ ■ We also reject defendant's argument that plaintiff cannot recover because the sale was commercially reasonable. We observe that commercial reasonableness is normally an issue of fact (see *Pioneer Bank & Trust Co. v. Mitchell* (1984), 126 Ill. App. 3d 870, 873-74, 467 N.E.2d 1011), ill-suited to disposition by dismissal. More important, the Code provides a right to recover any loss caused by the failure of the secured party to comply with procedures for the disposition of collateral, including violation of the notice provisions. (*First Galesburg National Bank & Trust Co. v. Joannides* (1984), 103 Ill. 2d 294, 300, 469 N.E.2d 180; Ill. Rev. Stat. 1981, ch. 26, par. 9—507(1).) Failure to furnish adequate notice may cause the debtor consequential damages, notwithstanding a commercially reasonable sale. (See, *e.g.*, *Hemken v. First National Bank* (1979), 76 Ill. App. 3d 23, 394 N.E.2d 868.) Here, plaintiff alleged damage as a result of defendant's failure to furnish sufficient notice. We reverse the dismissal of count III, and remand to the trial court for further proceedings.

Plaintiffs contend that count IV of their complaint stated a cause

of action asserting Pauline Willard's homestead interest. They allege that the 1972 conveyance into trust and the assignment of beneficial interest, both signed by William only, are void because Pauline never released the estate of homestead. Defendants Northwest and Wiedemann argue that Pauline never had any title interest in the residence, thus she could have no homestead interest. We believe that defendants have misconceived the nature of the homestead estate, and the trial court erred in dismissing count IV.

The homestead exemption, now incorporated in the Code of Civil Procedure, provides that every "householder" is entitled to an "estate of homestead to the extent in value of $10,000," which is "exempt from attachment, judgment, levy or judgment sale for the payment of his or her debts or other purposes and from the laws of conveyance, descent and devise ***." (Ill. Rev. Stat. 1981, ch. 110, par. 12—901.) The homestead exemption further provides that "[n]o release, waiver or conveyance of the estate so exempted shall be valid, unless the same is in writing, signed by the householder *and his or her spouse* ***." (Emphasis added.) (Ill. Rev. Stat. 1981, ch. 110, par. 12—904.) Homestead is a freehold estate in land, the purpose of which is "to insure to the family the possession and enjoyment of a home." *Brod v. Brod* (1945), 390 Ill. 312, 323, 61 N.E.2d 675.

In this case, the trial court found that Pauline Willard had no homestead right in the property. While it is probably true that William is the "householder" to whom the estate runs (see *First National Bank & Trust Co. v. Sandifer* (1970), 121 Ill. App. 2d 479, 258 N.E.2d 35 (presumption that husband is householder)), it does not follow that Pauline had no right. The homestead exemption benefits not just the householder, but the family, and affords the householder's spouse a veto-like power where alienation or encumbrance of the homestead are concerned. (See 40 C.J.S. *Homesteads* sec. 130 (1944).) As our supreme court stated in *Brod v. Brod* (1945), 390 Ill. 312, 323-24, 61 N.E.2d 675:

> "The proposition that a husband cannot, by his deed alone, *even though he own the entire fee*, deprive his wife of her homestead interest is so well established that citation of authority is unnecessary. Other than by a written instrument, signed and acknowledged as required by statute, a wife can be deprived of her interest in the homestead, whether it be an estate in land or a right of occupancy, only by her abandonment of the premises as her residence, her desertion of the family, or a decree of divorce making disposition of the homestead estate. We held in *Bailey v. Hamilton*, 337 Ill. 617, *** that the homestead inter-

est of a wife is a present interest of value. It was there stated: 'By her marriage and residence on the premises in question here, appellant Evelyn Bailey acquired the right to occupy them as her homestead. Her husband could not deprive her of that right without her consent ***.' '' (Emphasis added.)

■■■ The Willards alleged that at all relevant times, they were married and resided together on the premises in question. They alleged that Pauline signed no document indicating her consent either to William's conveyance into trust or his encumbering the property. If the allegations of count IV prove to be true, it appears that the conveyance into trust was ineffective to transfer the Willards' homestead interest; thus, the assignment of beneficial interest which the bank accepted as collateral for its loan did not include the estate of homestead. We reverse the dismissal of count IV of plaintiffs' complaint and remand this count to the trial court for further proceedings. Further, our decision with respect to the Willards' homestead interest compels us to reverse and remand the summary judgment and the award of possession.

■■■ A forcible entry and detainer proceeding determines the right to possession of the premises in question, and only matters germane to possession should be considered. (*Clore v. Fredman* (1974), 59 Ill. 2d 20, 25, 319 N.E.2d 18.) We noted earlier that homestead is a possessory freehold estate, and the cases indicate that homestead is a proper defense in a forcible detainer action. (See, *e.g., Cohn v. Litwin* (1941), 311 Ill. App. 55, 35 N.E.2d 410; *Van Winkle v. Weston* (1934), 276 Ill. App. 66.) Where a conveyance is defective by virtue of an outstanding homestead interest, the remedy depends upon the value of the property relative to the amount of the homestead exemption. If the property is worth less than the amount of the exemption, a defective conveyance "is wholly ineffectual to convey any interest whatever in the premises." (*Bailey v. Hamilton* (1929), 337 Ill. 617, 621, 169 N.E. 743.) If, on the other hand, the property is worth more than the exemption, the purchaser receives equitable title to the excess in value, which title may be enforced by paying or setting off the amount of the homestead to the debtor. (*Diets v. Hagler* (1923), 309 Ill. 381, 384, 141 N.E. 194.) The purchaser acquires no right to possession of the premises until the homestead is set off. *Macaulay v. Jones* (1920), 295 Ill. 614, 129 N.E. 520.

■■■ Here, the Willards set forth a proper claim of homestead. Should they prevail on the merits, they will be entitled to at least a setoff, and possibly to a declaration that the sale was void. Material fact questions remain concerning the appropriate remedy, but in any

case, a meritorious homestead claim would be a complete defense to Wiedemann's forcible detainer action. Accordingly, we find that the trial court erred in granting summary judgment against the Willards as to their homestead claim, and in awarding possession to Wiedemann.

The remaining counts of plaintiffs' complaint do not state any claim against Wiedemann, and so we affirm the trial court in granting summary judgment as to those counts. The first two counts allege a breach of fiduciary duty by the bank, but those claims are barred by Public Act 82—891. (See Ill. Rev. Stat. 1983, ch. 148, pars. 81 through 84.) The third count states a cause of action for violation of section 9—504 of the Uniform Commercial Code, but plaintiff has not alleged facts amounting to collusion, hence he would be entitled only to damages, and not to a declaration of invalidity. See Ill. Rev. Stat. 1981, ch. 26, par. 9—504(4).

■■ Finally, plaintiffs contend that Wiedemann's demand for possession was invalid because it was served while plaintiffs were protected by an automatic stay in bankruptcy. Wiedemann responds that the automatic stay was lifted as to the forcible detainer action and that plaintiffs' failure to resist the lifting of the stay in the bankruptcy court should estop them from enforcing it in the circuit court. We find that the record is insufficient to preserve the issue, and so we affirm the decision of the trial court. The party asserting error has the burden to present a record which illustrates the error. (*Foutch v. O'Bryant* (1984), 99 Ill. 2d 389, 391-92, 459 N.E.2d 958.) The only allusions to the bankruptcy issue appear in the motions and arguments of the attorneys, and the record is silent as to the underlying facts. In addition, we believe that the issue will become moot on remand.

For the foregoing reasons, the judgment of the circuit court is affirmed in part, reversed in part, and remanded for further proceedings.

Affirmed in part; reversed in part; remanded for further proceedings.

MEJDA, P.J., and SULLIVAN, J., concur.