**Theadore J. ROBINSON, Jr., Plaintiff,**

v.

**FORD MOTOR CREDIT COMPANY, Defendant.**

No. 88 C 0490.

United States District Court, N.D. Illinois, E.D.

Feb. 3, 1989.

Charles E. Nave, McNamee & Mahoney, Dundee, Ill., for plaintiff.

Michael L. Sherman, Sherman & Sherman, Chicago, Ill., for defendant.

## MEMORANDUM OPINION AND ORDER

ROVNER, District Judge.

### I. INTRODUCTION

This action concerns issues of Illinois law relating to the sale of collateral by a secured party. Plaintiff Theodore J. Robinson, Jr. ("Robinson") filed his Amended Complaint in this action on February 16, 1988 seeking recovery of compensatory and punitive damages and costs against defendant Ford Motor Credit, Inc. ("FMC") because FMC allegedly sold plaintiff's car at a private sale without notice to plaintiff in violation of the Uniform Commercial Code ("U.C.C."). Ill.Rev.Stat., ch. 26, ¶ 9–504(3). In its motion to dismiss, FMC attached exhibits indicating that FMC had sent Rob-

inson notice that his car could be sold on or after May 29, 1987 by private sale. The Court converted FMC's motion into a motion for summary judgment on the issue of whether Robinson had received "reasonable notification" under the U.C.C. and allowed both parties the opportunity to submit additional materials and affidavits in support of their respective positions.[1] Presently pending before the Court is FMC's motion for summary judgment. For the reasons discussed below, FMC's motion for summary judgment is granted.

## II. FACTS

The following facts are not in dispute. On April 21, 1986, Robinson entered into a security agreement with FMC for the purchase of a 1986 Ford Mustang under which Robinson agreed to give FMC a security interest in the Mustang in exchange for financing of $13,763.66. Under the security agreement, Robinson was required to make payments in sixty monthly installments and was required to purchase automobile insurance to protect against loss or damage to the vehicle. Robinson's insurance was terminated on November 9, 1986 and Robinson failed to make payments under the security agreement for the months of March and April of 1987. On April 30, 1987, FMC repossessed Robinson's car.

On May 4, 1987, two copies of a "Notice of Repossession and Right to Redeem" were sent to Robinson at his last known address, one by regular mail and one by certified mail.[2] The notice informed Robinson that if the Mustang was not redeemed, it would be sold at a private sale on or after May 29, 1987 at the Greater Chicago Auto Auction. Robinson admits that he was sent the notice and that he knew the vehicle would be sold by private sale on or after May 29, 1987.

On May 29, 1987, Robinson filed a petition under Chapter 13 of the United States Bankruptcy Code. The filing of the petition resulted in an automatic stay which prevented FMC from going forward with the sale of the car. On August 14, 1987, a confirmation proceeding on the plan of Robinson, the debtor-in-bankruptcy, was scheduled to take place in the Bankruptcy Court. Severe flooding in the Chicago area left Robinson's attorney stranded in the suburbs and prevented him from attending the confirmation proceeding. Robinson's attorney's efforts to contact the Bankruptcy Court by telephone were unsuccessful because all phone lines to the Bankruptcy Court were apparently not in working condition.

On August 14, 1987, the Bankruptcy Court dismissed Robinson's petition in bankruptcy. Dismissal of Robinson's Chapter 13 case lifted the automatic stay. On August 27, 1987, without any further notice to Robinson, FMC sold the Mustang in a private sale.[3]

## III. DISCUSSION

Section 9–504(3) of the U.C.C. requires the secured party to give notice to the debtor before disposing of collateral:

Unless collateral is perishable or threatens to decline speedily in value or is of a type customarily sold on a recognized market, *reasonable notification of the time and place of any public sale or reasonable notification of the date and time after which any private sale or other intended disposition is to be made shall be sent by the secured party to the debtor,* if he has not signed after

---

1. See Minute Order dated December 27, 1988.

2. The copy of the notice sent by certified mail was never received by Robinson. The certified mail was returned unclaimed to FMC on May 21, 1987, after the post office had left notice with Robinson on May 5 and May 11, 1987.

3. On August 14, 1987, Robinson instructed his attorney to file a motion to vacate the dismissal order. (Plaintiff's Response to Materials in Support of Defendant's Motion for Summary Judg-

ment and Additional Uncontested Facts, ¶ 20, at 4). Whether such a motion was ever filed is somewhat unclear to the Court. The Court assumes that no motion was ever filed by Robinson's counsel from the fact that Robinson contacted his attorney on August 29, 1987 and told him it would not be necessary to reinstate the Chapter 13 proceedings as the car had been sold (*id.,* at ¶ 21) and the absence of any file-stamped motion as an exhibit to the pleadings.

**608**

default a statement renouncing or modifying his right to notification of sale. Ill.Rev.Stat., ch. 26, ¶ 9–504(3) (emphasis added). Section 9–507(1) of the Code provides the debtor a right to recover damages caused by the secured party's failure to provide the debtor with "reasonable notification" of the sale. Ill.Rev.Stat., ch. 26, ¶ 9–507(1). *See also, First Galesburg Nat. Bk. & Trust Co. v. Joannides*, 103 Ill.2d 294, 300, 82 Ill.Dec. 646, 648, 469 N.E.2d 180, 182 (1984). The sole issue to be decided in FMC's motion for summary judgment is whether FMC gave Robinson "reasonable notification" of the sale of his car.

The U.C.C. does not contain a definition of "reasonable notification." *Spillers v. First Nat. Bk. of Arenzville*, 81 Ill.App.3d 199, 36 Ill.Dec. 477, 480, 400 N.E.2d 1057, 1060 (4th Dist.1980). Section 9–504(3) draws a distinction between "reasonable notification" in the context of a "public sale" and "reasonable notification" in the context of a "private sale." Where the disposition of collateral is to be by a "public sale," the statute requires the secured party to send the debtor notice of the "time and place" of the sale; if the collateral is to be sold via "private sale or other intended disposition," Section 9–504(3) requires only notice of the "time after which" the disposition is to be made. In interpreting whether "reasonable notification" has been given to the debtor, courts have recognized this distinction. *Ford Motor Credit Co. v. Solway*, 825 F.2d 1213, 1217–18 (7th Cir. 1987); *Willard v. Northwest Nat. Bank of Chicago*, 137 Ill.App.3d 255, 92 Ill.Dec. 92, 96, 484 N.E.2d 823, 827 (1st Dist.1985); *Ford Motor Credit Co. v. Jackson*, 126 Ill.App.3d 124, 81 Ill.Dec. 528, 530, 466 N.E.2d 1330, 1332 (3d Dist.1984).

The text of the U.C.C. does not define the difference between a "public sale" and a "private sale." The difference between the two types of sales is described in the informative comments to the Code. The Illinois Code Comment to Section 9–504 (Ill. Ann.Stat., ch. 26, ¶ 9–504, Illinois Code Comment, at 342 (Smith–Hurd 1974)) states in pertinent part: "A public sale under this subsection contemplates a sale by auction. See Official Comment to § 2–706. Pre-

Code Illinois decisional law was in accord." (citations omitted). Official Comment 4 to Section 2–706 (Ill.Ann.Stat., ch. 26, ¶ 2–706, Official Comment 4, at 530 (Smith–Hurd 1963)) states: "By 'public' sale is meant a sale by auction. A 'private' sale may be effected by solicitation and negotiation conducted either directly or indirectly." *See Continental Ill. Nat. Bk. and Trust Co. of Chicago v. Hyder*, 150 Ill.App.3d 911, 104 Ill.Dec. 168, 170, 502 N.E.2d 431, 433 (1st Dist.1986).

■ "The purpose of giving a debtor notice of a public sale is to provide him with the opportunity to gather with and bid in the presence of potential purchasers, and to observe that the sale is conducted in a commercially reasonable manner." *General Foods Corp. v. Hall*, 39 Ill.App.3d 147, 349 N.E.2d 573, 577 (1st Dist.1976). Specific notice of when and where the public sale is to be held is thus required to achieve this purpose. *Solway*, 825 F.2d at 1218. In a private sale, unlike a public sale, the debtor is not entitled to participate. Accordingly, the secured party need only provide the debtor with notice of the date after which the private sale is to be made. *Id.*

■ The parties do not contest the fact that the car was sold via private sale on August 27, 1987. Nor do the parties contest that the original May 4, 1987 notice of repossession and right to redeem informed Robinson that his car would be sold at a private sale "on or after May 29, 1987." The only contested issue is whether FMC was required to give Robinson new notice of the subsequent August 27, 1987 date of the private sale after the bankruptcy was dismissed and the automatic stay of the bankruptcy was lifted.

Robinson argues that FMC's failure to give him notice of the private sale of his car on August 27, 1987 gives Robinson the right to recover damages against FMC under Section 9–507(1). FMC argues that its May 4, 1987 notice was "reasonable notification" under the statute and precludes Robinson from recovery of any damages. FMC admits that had the original notice advertised a public sale to be held at a

specific place on a specific date at a specific time, FMC would have been obligated under Section 9–504(3) to give new notice to Robinson of any subsequent public sale or private sale. *See Nat. Boulevard Bk. of Chicago v. Jackson*, 92 Ill.App.3d 928, 48 Ill.Dec. 327, 330, 416 N.E.2d 358, 361 (1st Dist.1981). FMC contends, however, that the U.C.C. does not require additional notice when the original notice relates to a private sale. According to FMC, if the Court accepts Robinson's position, "the Court would have to fashion a new requirement wherein secured parties would be required to provide additional notice of the time after which a private sale will be held wherein there is an intervening bankruptcy proceeding." (Mem. in Support of Motion to Dismiss, at 7).

In support of his position that FMC was required to give him additional notice, Robinson directs the Court's attention to *Staley Employee Credit Union v. Christie*, 111 Ill.App.3d 165, 66 Ill.Dec. 805, 443 N.E.2d 731 (4th Dist.1982). In *Staley*, the collateral in issue was originally offered at a public sale. At the time of the sale, only one bid was submitted for each of the two pieces of collateral and the creditor rejected these bids as too low. *Id.* 66 Ill.Dec. at 806, 443 N.E.2d at 732. The debtor was never given notice of the subsequent private sale at which the collateral was actually sold. Under these circumstances— "where the sales eventually made were not the sale for which defendants were given notice"—the court held that the creditor did not give the debtor "reasonable notification" under Section 9–504(3).

*Staley* is immediately distinguishable because the original notice of sale informed the debtor that the sale was to be a public sale. Here, the original notice sent to Robinson advertised a private sale. More supportive of plaintiff's position is the earlier decision of *Spillers v. First Nat. Bk. of Arenzville*, 81 Ill.App.3d 199, 36 Ill.Dec. 477, 400 N.E.2d 1057 (4th Dist.1980). In *Spillers*, a creditor repossessed two items of collateral, a crane and a set of concrete forms, and later notified the debtor that it had received a bid of $15,000 for the crane. The notice stated that the crane would be

sold within ten days from receipt of the notice by private sale. *Id.* 36 Ill.Dec. at 478, 400 N.E.2d at 1058. The debtor then received an offer of $16,000 for the crane through a corporation owned by it. After the debtor notified the creditor of this higher offer, the two parties entered into negotiations over the terms of the sale at the $16,000 price. The creditor imposed three conditions on the sale which the debtor could not meet and the deal broke down. Subsequently, the creditor sold the crane to the original bidder for $15,000 without notifying the debtor. Thereafter, the creditor sold the concrete forms to the highest bidder. The debtor had general knowledge of the impending sale of the forms but did not learn of the specifics of the sale until after it was consummated. *Id.*

The *Spillers* court held that the notice given by the creditor of both sales was not "reasonable notification." Focusing on the word "any" as used in Section 9–504(3) in the phrase "reasonable notification ... after which *any* private sale ... is to be made shall be given by the secured party to the debtor" (emphasis added), the court held that the creditor had a duty to notify the debtor of "all and every" proposed private sale or sales. *Id.* 36 Ill.Dec. at 480, 400 N.E.2d at 1060.

Based on *Spillers*, it would seem that Robinson's position that FMC was required to provide him with additional notice of the subsequent date of the private sale is meritorious. Subsequent case law, however, has distinguished *Spillers* on its facts and limited the reach of its holding. *See Ford Motor Credit Co. v. Solway*, 825 F.2d 1213 (7th Cir.1987), *Ford Motor Credit Co. v. Jackson*, 126 Ill.App.3d 124, 81 Ill.Dec. 528, 530, 466 N.E.2d 1330, 1332 (3d Dist.1984).

In *Ford Motor Credit Co. v. Jackson*, the creditor sent the debtor a notice that if his truck were not redeemed it would be sold at a private sale on or after November 22, 1980. The truck was not sold until some six months later by private sale on June 24, 1981. No additional notice of the subsequent sale was given to the debtor. *Id.* 81 Ill.Dec. at 529, 466 N.E.2d at 1331.

Relying on *Spillers*, the debtor argued that the notice of sale was insufficient under Section 9–504(3) because it did not inform him of the June 24 sale. *Id.* 81 Ill. Dec. at 530, 466 N.E.2d at 1332. The court, however, rejected the debtor's argument, distinguishing its case from *Spillers* as follows:

> In the instant case, the sale, although held six months after the notice was the same one originally contemplated. There was not a second sale of collateral or an intervening offer by the defendant. In the absence of these factors, we interpret 9–504(3) as requiring only one notice of the date after which one private sale of collateral will be held.

*Id.* Accordingly, the Court held that the creditor's original notice complied sufficiently with Section 9–504(3).

More recently, in *Ford Motor Credit Co. v. Solway*, 825 F.2d 1213 (7th Cir.1987), the Seventh Circuit, similarly rejected the broad holding of *Spillers* which requires creditors to notify debtors of each and every private sale. *Id.* at 1219. In *Solway*, the creditor repossessed the debtor's inventory of cars, vans and trucks, and sent notice to the debtor that the vehicles would be sold at "a private sale on or after" April 12, 1980. Subsequently, the creditor sold the vehicles over time at weekly private sales at the Arena Auto Auction. *Id.* at 1215. Citing *Spillers*, the debtor argued that the creditor was required to give him separate notice of the date of each and every private sale. *Id.* at 1218.

As in *Jackson*, the Seventh Circuit limited *Spillers* to its unique set of facts. *Spillers* was different because the proposed sale did not take place on the given date of the notice. Moreover, after the original notice was given, the parties began negotiations for a different sale at a higher price than the original sale price. Thus, "the sale that occurred was not the one for which notice had been given." *Id.*

Citing *Jackson* and other Illinois case law, the Seventh Circuit noted that Illinois courts had limited the holding of *Spillers* "to the proposition that notice of the sale of collateral must not be misleading." *Id.*

at 1219. Unlike *Spillers*, "there were no subsequent events that made the information in the notice inaccurate or misleading." *Id.* The notice provided by the creditor simply conformed to the requirement of Section 9–504(3) that the notice indicate "the time after which any private sale ... is to be made." *Id.*

The Court finds that the facts of the instant case more closely parallel *Jackson* and *Solway* than *Spillers*. Unlike *Spillers*, where the intervening negotiations between the parties effectively altered the terms of the sale contemplated by the original notice, nothing transpired between the parties in the instant case which made the contents of the original notice misleading or inaccurate. As in *Jackson*, where six months passed after the notice of the private sale, the mere passage of three months' time in the present case did not change the nature of the sale originally contemplated by the May 4 notice. For all intents and purposes the August 27, 1987 sale was the same sale contemplated by the original notice. The automatic stay did not in any way make the original notice inaccurate or misleading; it was merely the reason for the delay of the eventual sale.

If the original notice had contemplated a public sale, or if the subsequent sale were a public sale, the Court's conclusion would have been different. *See Willard v. Northwest Nat. Bk.*, 137 Ill.App.3d 255, 92 Ill.Dec. 92, 484 N.E.2d 823 (1st Dist.1985) (notice of December 15 public sale date did not constitute reasonable notification of the sale which was delayed by a temporary judicial stay and which did not take place until over one month later on January 22). If the original notice advertised a public sale, the subsequent sale of the car by private sale would have been a different sale than the sale originally contemplated. *See Staley*, 66 Ill.Dec. at 806, 443 N.E.2d at 732. If the subsequent sale were a public sale, failure to notify the debtor of the new date would have prevented the debtor from attending the public sale and bidding on the collateral. But, in the instant case, where the debtor could not attend either private

sale, the debtor was not prejudiced by his failure to receive additional notice.

■ Although the Court sympathizes with the misfortune which caused plaintiff to miss the bankruptcy court date, plaintiff did become aware that the bankruptcy court had dismissed its petition and should have known that the automatic stay no longer prevented FMC from selling the car. The Court does not believe it was FMC's responsibility to notify Robinson of the effect of the dismissal by sending Robinson additional notice of a new date of the private sale. The Court sees no reason to impose upon a secured creditor the burden of providing additional notice of a private sale to a debtor where the automatic stay protecting the debtor's property has been lifted and the debtor should have been aware that it was lifted.

### IV. CONCLUSION

The Court finds that the original notice sent by FMC on May 4, 1987, which informed Robinson that his car could be sold at a private sale on or after May 29, 1987, constituted "reasonable notification" under Section 9–504(3). Accordingly, the Court grants FMC's motion for summary judgment.

