# Illinois Official Reports

## Appellate Court

---

### *GMAC Mortgage, LLC v. Arrigo*, 2014 IL App (2d) 130938

---

| | |
|---|---|
| Appellate Court Caption | GMAC MORTGAGE, LLC, Plaintiff and Counterdefendant-Appellant, v. NICHOLAS A. ARRIGO, LINA ARRIGO, WELLS FARGO BANK, N.A., LEE STATION MASTER ASSOCIATION, NFP, LEE STATION TOWNHOME ASSOCIATION, NFP, and UNKNOWN OWNERS and NONRECORD CLAIMANTS, Defendants and Counterplaintiffs-Appellees. |
| District & No. | Second District<br>Docket No. 2-13-0938 |
| Filed<br>Rehearing denied | April 4, 2014<br>May 20, 2014 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | Pursuant to a question certified by the trial court under Supreme Court Rule 308 in a foreclosure action, the appellate court answered that a spouse who is not named as a titleholder of a house, but is married to the titleholder and maintains the property as her primary place of residence, cannot claim a homestead exemption in the property under section 12-901 of the Code of Civil Procedure. |
| Decision Under Review | Appeal from the Circuit Court of Du Page County, No. 11-CF-5214; the Hon. Robert G. Gibson, Judge, presiding. |
| Judgment | Certified question answered. |

Counsel on
Appeal

Darnella J. Ward, of Fidelity National Law Group, of Chicago, for appellant.

David R. Sweis, of Sweis Law Firm, P.C., of Oak Brook, for appellees.

Panel

JUSTICE JORGENSEN delivered the judgment of the court, with opinion.
Justices Hudson and Birkett concurred in the judgment and opinion.

**OPINION**

¶ 1    This interlocutory appeal under Illinois Supreme Court Rule 308 (eff. Feb. 26, 2010) arises from a foreclosure proceeding that plaintiff, GMAC Mortgage, LLC, initiated against defendants, Nicholas A. Arrigo, Lina Arrigo, Wells Fargo Bank, N.A., Lee Station Master Association, NFP, Lee Station Townhome Association, NFP, and unknown owners and nonrecord claimants. Defendants counterclaimed and raised an affirmative defense, seeking partition based on Lina's claim to a homestead exemption. GMAC moved to dismiss pursuant to section 2-619 of the Code of Civil Procedure (Code) (735 ILCS 5/2-619 (West 2012)). The trial court denied the motion, but certified the following question pursuant to Rule 308: "Whether a spouse may claim her homestead exemption when that spouse is not on title to the property but is the spouse of the title holder and maintains the property as her primary place of residence under [section 12-901 of the Code (735 ILCS 5/12-901 (West 2012))]." We granted GMAC's application for leave to appeal. For the following reasons, we answer the certified question in the negative.

¶ 2    I. BACKGROUND

¶ 3    In 2003, Nicholas purchased the subject property at 0S076 Lee Court in Winfield (tax parcel No. 04-13-201-077) with a $244,900 purchase-money mortgage from First Home Mortgage, and he refinanced on two occasions: first, in 2004, and, second, in 2009 (with Guaranteed Rate, Inc., which later assigned the note to GMAC).

¶ 4    On November 2, 2011, GMAC filed a mortgage foreclosure complaint against defendants, seeking a judgment of foreclosure and sale because Nicholas, the owner of the property, defaulted on his obligations. In an amended complaint, it alleged that Nicholas, who was described as "A MARRIED MAN" in the mortgage, waived his homestead exemption. The

balance due on the note and mortgage was $220,000. GMAC joined Lina, Nicholas's wife, as a defendant because she "may have some interest in the subject real estate."[1]

¶ 5      Defendants filed their answer, raising three affirmative defenses, including, as relevant here, unclean hands; specifically, Lina argued that her signature on a purported waiver of homestead rights was forged and that she was not present at the time of closing. Defendants asserted that the closing occurred at Nicholas's residence; Lina was not present and did not execute any documents associated with the refinance; Lina never received or signed a waiver of homestead rights; and James M. Rubel, the purported notary of the waiver, was not present at the closing and Lina had never come into contact with him. Defendants requested that the court dismiss the cause with prejudice.

¶ 6      On November 6, 2012, defendants filed their counterclaim for partition, raising allegations similar to those contained in their unclean-hands affirmative defense. They further alleged that, at the time of the refinance, the subject property was Lina's primary residence and she had homestead rights and was entitled to a $15,000 estate of homestead.

¶ 7      GMAC moved, in a combined motion, to strike and dismiss defendants' affirmative defenses and counterclaim (735 ILCS 5/2-615, 2-619 (West 2012)). As relevant here, the trial court granted the motion without prejudice as to the second affirmative defense (unclean hands) and counterclaim.

¶ 8      Lina filed an amended counterclaim for partition on April 3, 2013, alleging that she was entitled to her own homestead exemption because the subject property had been her primary residence since the time of the refinance and realleging that she did not sign the waiver of homestead rights and was not present at closing.

¶ 9      GMAC moved to dismiss the amended counterclaim pursuant to section 2-619 of the Code, arguing that, as a matter of law, a spouse may not claim the statutory homestead exemption under section 12-901 of the Code when that spouse has no formalized interest in or formalized possession of the home. It noted that Lina was not on the title to the subject property, and it argued that it was irrelevant that she claimed that she did not give her express waiver.

¶ 10      On July 17, 2013, the trial court denied the motion, relying on *Brod v. Brod*, 390 Ill. 312 (1945), and reading it to hold that the spouse's interest need not be formalized, but acknowledging that more recent federal cases interpreting Illinois law supported GMAC's position. Subsequently, on August 29, 2013, it certified the following question: "Whether a spouse may claim her homestead exemption when that spouse is not on title to the property but is the spouse of the title holder and maintains the property as her primary place of residence under [section 12-901 of the Code (735 ILCS 5/12-901 (West 2012))]." Further, the court stayed the proceedings pursuant to Rule 308(e). This court, on October 9, 2013, granted leave to appeal on the question.

¶ 11                                           II. ANALYSIS

---

[1]GMAC also joined Wells Fargo by virtue of a mortgage executed by Nicholas in 2004 to secure a $25,000 note. GMAC also joined Lee Station Master and Lee Station Townhome because they are townhome associations for the property and "may have some interest in the subject property for unpaid assessments or other charges."

¶ 12    GMAC argues that defendants cannot seek partition, because Lina holds no ownership interest in the subject property. It contends that recent case law, albeit from federal courts interpreting Illinois law, warrants answering the certified question in the negative (and further supports dismissal of defendants' counterclaim). GMAC also argues that *Brod*, the supreme court case upon which the trial court primarily relied, is factually and legally distinguishable and is based on antiquated law. For the following reasons, we conclude that Lina cannot claim the exemption and we answer the certified question in the negative.

¶ 13    Rule 308 provides a remedy of permissive appeal from an interlocutory order where the trial court has deemed that it involves a question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation. Ill. S. Ct. R. 308 (eff. Feb. 26, 2010). Because an interlocutory appeal under Rule 308 necessarily involves a question of law, our review is *de novo*. *In re Marriage of Mathis*, 2012 IL 113496, ¶ 19. Further, this appeal raises a statutory construction question. Issues of statutory construction also present questions of law that we review *de novo*. *Hall v. Henn*, 208 Ill. 2d 325, 330 (2003).

¶ 14    The cardinal rule of statutory construction is to ascertain and effectuate the legislature's intent. *Moore v. Green*, 219 Ill. 2d 470, 479 (2006). The best indicator of that intent is the express language of the statute, which should be given its plain and ordinary meaning. *Wilkins v. Williams*, 2013 IL 114310, ¶ 14. In interpreting a statute, we must read the relevant provisions in their entirety and in their context within the broader framework of the act of which they are a part. *Solon v. Midwest Medical Records Ass'n*, 236 Ill. 2d 433, 440 (2010).

¶ 15    Estates of homestead are statutory creations. *Bank of Illmo v. Simmons*, 142 Ill. App. 3d 741, 744 (1986). "Homestead is a freehold estate in land, the purpose of which is 'to insure to the family the possession and enjoyment of a home.' " *Willard v. Northwest National Bank of Chicago*, 137 Ill. App. 3d 255, 264 (1985) (quoting *Brod*, 390 Ill. at 323). It further secures to the homesteader "a shelter beyond the reach of his improvidence or financial misfortune." *People v. One Residence Located at 1403 East Parham Street*, 251 Ill. App. 3d 198, 201 (1993). Homestead exemption statutes are liberally construed. *Id.*

¶ 16    Section 12-901 of the Code is the homestead exemption statute at issue here and provides:

"Every individual is entitled to an estate of homestead to the extent in value of $15,000 of his or her interest in a farm or lot of land and buildings thereon, a condominium, or personal property, *owned or rightly possessed by lease or otherwise and occupied by him or her as a residence*, or in a cooperative that owns property that the individual uses as a residence. That homestead and all right in and title to that homestead is exempt from attachment, judgment, levy, or judgment sale for the payment of his or her debts or other purposes and from the laws of conveyance, descent, and legacy, except as provided in this Code or in Section 20-6 of the Probate Act of 1975. This Section is not applicable between joint tenants or tenants in common but it is applicable as to any creditors of those persons. If 2 or more individuals *own* property that is exempt as a homestead, the value of the exemption of each individual may not exceed his or her proportionate share of $30,000 based upon percentage of ownership." (Emphases added.) 735 ILCS 5/12-901 (West 2012).

¶ 17    GMAC argues first that the plain language of the statute bars defendants' claim because it does not support their interpretation that Lina has her own homestead exemption apart from Nicolas. The burden of proving the existence of a homestead is on the individual asserting it.

- 4 -

*First State Bank of Princeton v. Leffelman*, 167 Ill. App. 3d 362, 366 (1988). To qualify for the exemption, an "individual" must (1) occupy the property "as a residence"; and (2) have some right in the property ("owned or rightly possessed by lease or otherwise"). 735 ILCS 5/12-901 (West 2012). It is undisputed that Lina is an individual who occupied the subject property as a residence. It is also undisputed that she did not own or lease it. The question is whether she "otherwise" rightly possessed it. The phrase "or otherwise" could encompass a broad range of either similar or dissimilar possessory interests. See Black's Law Dictionary 1101 (6th ed. 1990) (defining "otherwise" as "[i]n a different manner; in another way, or in other ways," but defining "other" as, *inter alia*, including "only others of like kind and character"). It is ambiguous. GMAC, however, argues that the final sentence of the statute and federal case law instruct that *only* a formalized interest satisfies this requirement.

¶ 18    The final sentence of the statute, which was added in 1994,[2] provides that, where two or more individuals "own" the property, their exemptions may not exceed their proportionate shares of $30,000 (*i.e.*, the value of two exemptions). GMAC argues that this final sentence reflects a legislative intent that some *formalized* right of possession is required for someone to "otherwise" rightly possess the property, because that provision uses the term "own," which, in GMAC's view, reflects the requirement of "ownership of some type." Reading the statute as a whole, however, we believe that the final sentence merely creates an ambiguity in cases such as this. (As defendants assert, the legislature, had it intended such a limitation, would have included language limiting the exemption to titleholders.) A reader whose circumstances do not put him or her within the parameters of the final sentence would have to satisfy the "or otherwise" requirement earlier in the statute, which, as previously noted, is ambiguous. We disagree that the only reasonable reconciliation of the sentences is that two or more persons in possession must own the property in order to qualify for the exemption. The broad language in the early portion of the statute cannot be reconciled with the narrow language of the final sentence, which, further, reflects that its purpose is not to clarify the *types* of interests that satisfy the statute, but, rather, to place a *cap* on the exemption amount where property is owned by two or more individuals.

¶ 19    We turn next to the case law upon which GMAC relies, which it admits consists primarily of recent federal cases interpreting Illinois law. *In re Belcher*, 551 F.3d 688 (7th Cir. 2008), a bankruptcy case, is the most instructive. It warrants extensive consideration, as we adopt its reasoning herein. In that case, a couple filed for chapter 7 bankruptcy protection and, after the trustee sold their home to satisfy their debts, both the husband and the wife claimed homestead exemptions under section 12-901 of the Code. The trustee objected to the husband's claim, arguing that he was ineligible because his name was not on the title to the home. Both the husband and the wife lived in the home, but the husband was neither on the title nor liable for payment of the mortgage. The *Belcher* court held that the husband could not claim the homestead exemption from the sale proceeds of the home, where his name was not on the title and he did not have any other formalized interest in the property. *Id.* at 689. The court based its decision on its view that "Illinois caselaw has consistently required a party to have a formalized property interest to claim a homestead exemption." *Id.* The court noted that lower federal bankruptcy courts in the circuit had been divided on the issue and that the only district

----

[2]Pub. Act 88-672, § 25 (eff. Dec. 14, 1994).

- 5 -

court to reach the issue had held that the exemption did not apply unless the spouse's name was on the title. *Id.* at 690.[3] In reaching its conclusion that a spouse must have a formalized property interest in the home to claim a homestead exemption under the statute, the *Belcher* court began its analysis by assessing the nature of the husband's interest. *Id.* at 690-91. It noted that, under Illinois divorce laws, a nontitled spouse has a potential equitable interest in the marital home upon divorce and that the probate statute allows a surviving spouse to claim an equitable interest in the marital home (when the titled spouse dies, regardless of whether the surviving spouse's name was ever on the title). *Id.* at 691. However, neither of the foregoing situations was triggered where the spouses were still married and alive when they filed their bankruptcy petition. *Id.* The *Belcher* court rejected the husband's argument that his future or potential equitable interest was sufficient to claim that he "owned or rightly possessed by lease or otherwise" the marital home. *Id.*

¶ 20　　In reaching this conclusion, the *Belcher* court relied (as does GMAC here) on Illinois case law that, it noted, "suggested that a titled interest is required to sustain a homestead estate." *Id.* (citing *DeMartini v. DeMartini*, 385 Ill. 128, 137 (1943) (homestead estate can have no existence separate from the title upon which it depends)); see also *First National Bank & Trust Co. of Rockford v. Sandifer*, 121 Ill. App. 2d 479, 482 (1970) ("[s]ome title, no matter what its extent, is also necessary to claim a homestead exemption"); *Sterling Savings & Loan Ass'n v. Schultz*, 71 Ill. App. 2d 94, 112 (1966) (same as to woman claiming exemption based on land she possessed as a beneficiary of a land trust; noting that "something more than mere possession is required to entitle a party to a homestead estate"); *Jones v. Kilfether*, 12 Ill. App. 2d 390, 396-97 (1956) (husband's mere occupancy of property that was fully titled in his wife did not give him a right of homestead and, thus, a right to eject a houseguest from the family home; homestead right has no existence independent of the title). The *Belcher* court conceded that the foregoing cases turned on the definition of "householder" that was used in pre-1982 versions of the homestead statute, which permitted only one spouse to claim an exemption. *Belcher*, 551 F.3d at 692. However, the court determined that subsequent developments led it to conclude that the "1982 expansion of the homestead exemption did not eliminate the requirement of a formalized property interest." *Id.* (noting that the 1982 amendment[4] replaced "householder" with "individual" and, therefore, more than one person could claim the exemption). In this respect, the court then assessed the final sentence of the statute, which, again, was added in 1994, and it concluded that the legislature's use of the terms "own" and

---

[3]Bankruptcy court cases holding that spouses could claim homestead exemptions, even if they did not hold title to the premises, include *In re Miller*, 174 B.R. 279 (Bankr. N.D. Ill. 1994), *In re Silverman*, 98 B.R. 415 (Bankr. C.D. Ill. 1988), and *In re Reuter*, 56 B.R. 39 (Bankr. N.D. Ill. 1985). Bankruptcy court cases holding that a spouse must have a titled interest include *In re Popa*, 218 B.R. 420 (Bankr. N.D. Ill. 1998), *In re Hartman*, 211 B.R. 899 (Bankr. C.D. Ill. 1997), and *In re Owen*, 74 B.R. 697 (Bankr. C.D. Ill. 1987). See also *Popa v. Peterson*, 238 B.R. 395 (N.D. Ill. 1999) (district court case; spouse must hold title to claim exemption).

[4]The 1982 Revisory Act (Pub. Act 82-783, art. III, § 43 (eff. July 13, 1982)).

"ownership" in the statute "establishes that something more than mere possession is required to claim the homestead exemption." *Id.* at 692 (noting legislative history).[5]

¶ 21 The *Belcher* court rejected the argument that the combination of (1) section 16 of the Rights of Married Persons Act (750 ILCS 65/16 (West 2012)), which requires one spouse to provide a homestead for the other spouse before removing that spouse from the homestead without his or her consent,[6] (2) section 27 of the Conveyances Act (765 ILCS 5/27 (West 2012)), which requires that a spouse's release or waiver of homestead rights be express,[7] and (3) "the potential equitable interests of a nontitled spouse under Illinois' divorce and probate laws" gives the nontitled spouse who lives in the marital home a property interest sufficient to claim the exemption. *Belcher*, 551 F.3d at 692-93. The *Belcher* court concluded that the Rights of Married Persons Act "only protects the right of the nontitled spouse to have housing *somewhere*. *** [It] does not create a property interest in the marital home because it does not guarantee a possessory interest *in that property*." (Emphases in original.) *Id.* at 693. According to the court, even if it did, the interest would be merely one to occupy the residence, and Illinois case law, in its view, "consistently" had held that " 'something more than mere possession is required to entitle a party to a homestead estate.' " *Id.* (quoting *Schultz*, 71 Ill. App. 2d at 112). Turning to the Conveyances Act's provision concerning waivers of the right to homestead accommodation, the court concluded that it "does not inform the determination of what interest in property gives rise to a homestead exemption." *Id.* It concluded that "homestead exemptions are designed to protect property from third-party creditors. Yet the Rights of Married Persons Act and the [Conveyances Act] address only the rights of a nontitled spouse vis-à-vis the titled spouse; they are silent regarding the rights of third-party creditors." *Id.*

¶ 22 Finally, the *Belcher* court noted that its conclusion that the husband was not entitled to a homestead exemption avoided an anomalous result in that, if the husband had individually

---

[5]See 88th Ill. Gen. Assem., House Proceedings, Nov. 30, 1994, at 41 (statements of Representative Hoffman) ("[New sentence] specifically provides that if two or more persons own property that is exempt as a homestead, the value of each personal exemption may not exceed his or her proportionate share of $15,000 based on the percentage of ownership. For instance, you and your wife own, with regard to the homestead exemption, own property, you would go in and sign up for $7,500 apiece. If you, your wife and your wife's sister lived with you and was [*sic*] ownership, you couldn't get $7,500 apiece. You would get $15,000 total."); see also *In re Hartman*, 211 B.R. 899 (Bankr. C.D. Ill. 1997) (referring to legislative history as "scant" and holding that a spouse with no ownership interest is not entitled to homestead exemption).

[6]"Neither the husband nor wife can remove the other or their children from their homestead without the consent of the other, unless the owner of the property shall, in good faith, provide another homestead suitable to the condition in life of the family; and if he abandons her, she is entitled to the custody of their minor children, unless a court of competent jurisdiction, upon application for that purpose, shall otherwise direct." 750 ILCS 65/16 (West 2012).

[7]"No deed or other instrument shall be construed as releasing or waiving the right of homestead, unless the same shall contain a clause expressly releasing or waiving such right. And no release or waiver of the right of homestead by the husband or wife shall bind the other spouse unless such other spouse joins in such release or waiver." 765 ILCS 5/27 (West 2012).

declared bankruptcy, his home would not be part of his estate under the bankruptcy statute, because his wife owned it and he had no legal or equitable interest in it. *Id.* (citing 11 U.S.C. § 541 (2000)). The interpretation that the couple had proposed, *i.e.*, that, in a joint bankruptcy proceeding, the husband could "rely on this potential interest to protect some of the proceeds from the sale of the house from creditors," would create an "irreconcilable conflict" that Illinois courts would avoid creating. *Id.*

¶ 23    Here, GMAC contends that, pursuant to *Belcher*, Lina cannot claim her own homestead exemption without demonstrating ownership or a formalized interest. GMAC further argues that *Brod*, a 1945 case upon which the trial court relied, is factually and legally distinguishable and based on antiquated law with no bearing here. In *Brod*, the husband, who had deserted his wife, brought an action to partition their jointly owned residence in which the wife still lived. The supreme court held that the wife was entitled to the entire value of the $1,000 homestead exemption, where the husband had left and abandoned the homestead, was living separate and apart from the wife through no fault of hers, and had offered no other suitable homestead for her. *Brod*, 390 Ill. at 326. Specifically, it stated: "we hold that a wife who owns property jointly with her husband, cannot be deprived of her valuable right to the continuity of a home, whether it be called right of occupancy or homestead, by any other than the methods prescribed by statute, and that when a husband institutes partition proceedings against the wife involving the home, he must either bona fidely provide another suitable homestead for her or set off to her under the statute the homestead interest of $1,000." *Id.* In discussing the homestead exemption's purpose and public policy, however, the *Brod* court noted that, where one spouse "own[s] the entire fee," he or she cannot, by deed alone, deprive the other spouse of his or her homestead interest without that spouse's consent or other acts. *Id.* at 323-24. The homestead statute in *Brod* provided:

> " 'That *every householder having a family*, shall be entitled to an estate of homestead, to the extent and value of $1,000, in the farm or lot of land and buildings thereon, *owned or rightly possessed, by lease or otherwise, and occupied by him or her as a residence*; and such homestead, and all right and title therein, shall be exempt from attachment, judgment, levy or execution, sale for the payment of his debts, or other purposes, and from the laws of conveyance, descent and devise, except as hereinafter provided.' " (Emphases added.) *Id.* at 320-21 (quoting Ill. Rev. Stat. 1943, ch. 52, ¶ 1).

¶ 24    The *Brod* court noted older authority that held that a wife's homestead interest is a present interest of value. *Id.* at 324 (citing *Bailey v. Hamilton*, 337 Ill. 617, 621 (1929) (further noting that by "marriage and residence" the wife "acquired the right to occupy" the premises as her homestead and her "husband could not deprive her of that right without her consent")). The *Bailey* court stated that the wife's homestead interest constitutes "a continuous right of occupancy, which is a real and substantial interest," and that the right is more than an estate in land vested in the householder. *Bailey*, 337 Ill. at 622. "It is an estate which gives to the spouse of the householder a right to present enjoyment of it, even as against the wishes of such householder. It cannot be conveyed without her signature, and if the husband abandons her and her family, it continues in her." *Id.* at 623.

¶ 25    GMAC argues that the trial court erred in relying on *Brod* (and that the certified question should be answered in the negative) because: (1) the case is factually distinguishable because the husband and wife in that case held title as joint tenants, they purchased under a contract running to both parties, and the wife provided funds for the purchase; thus, there was a

formalized interest under which the wife claimed her own homestead exemption; (2) the case addressed a pre-1982-amendment version of the homestead exemption statute; and (3) the portion upon which the trial court here relied was *obiter dictum* (see *Lebron v. Gottlieb Memorial Hospital*, 237 Ill. 2d 217, 236 (2010) (*obiter dictum* (or *dictum*) "is a remark or opinion that a court uttered as an aside" and "is not essential to the outcome of the case, is not an integral part of the opinion, and is generally not binding authority or precedent within the *stare decisis* rule")).

¶ 26 Defendants urge that *Brod* controls and that the relevant language in that case is not *obiter dictum* but was central to the court's holding. The court did not base its decision, they further urge, on the fact that the parties in that case were joint tenants. They point to the court's comment that "[i]n the view which we take of this case, it is *immaterial* as far as the final result is concerned whether the right of the wife in a joint tenancy with her husband is designated a right of occupancy or a homestead." (Emphasis added.) *Brod*, 390 Ill. at 323. The court continued: "The proposition that husband cannot, by his deed alone, even though he own the entire fee, deprive his wife of her homestead interest is so well established that citation of authority is unnecessary." *Id.* Classifying the foregoing language as *obiter dicta*, defendants argue, would "unjustly diminish its value," because it reflects the policy providing the foundation of *Brod*'s holding.

¶ 27 We conclude that *Brod* is distinguishable because the couple in that case owned the property as joint tenants, the case involved a dispute between a husband and a wife and not a couple against a creditor, and, perhaps most significantly, the case did not center on section 12-901 of the Code, which is the homestead exemption statute at issue here. The *Brod* couple owned the property as joint tenants, and the court explicitly stated that "we hold that a wife who owns property jointly with her husband cannot," in partition proceedings, "be deprived of her valuable right to the continuity of a home, whether it be called a right of occupancy or homestead, by any other than the methods prescribed by statute, and" in partition proceedings the husband "must either bona fidely provide another suitable homestead for her or set off to her under the statute the homestead interest of $1,000." *Id.* at 326. The reference to a suitable homestead is a clear reference to what is now section 16 of the Rights of Married Persons Act, which, as noted above, precludes a spouse from removing the other spouse or their children without the other's consent unless the owner provides another suitable homestead. 750 ILCS 65/16 (West 2012). The *Brod* language upon which defendants here primarily rely, that the "proposition that a husband cannot, by his deed alone, even though he own the entire fee, deprive his wife of her homestead interest is so well established that citation of authority is unnecessary" (*Brod*, 390 Ill. at 323), is directly followed by language reflecting that the court was considering statutes not at issue here:

> "Other than by a written instrument, signed and acknowledged as required by statute[, *i.e.*, section 12-904 of the Code, which addresses releases, waivers, and conveyances, and section 27 of the Conveyances Act, which requires an express release or waiver], a wife can be deprived of her interest in the homestead, whether it be an estate in land or a right of occupancy, only by her abandonment of the premises as her residence, her desertion of the family[, *i.e.*, under section 12-902 of the Code, which addresses the exemption after death or desertion], or a decree of divorce making disposition of the homestead estate." *Id.* at 323-24.

Furthermore, directly following the foregoing quotation, the *Brod* court discusses *Bailey* and quotes the holding in that case, specifically that, as between a husband and a wife and by statute, " 'where a homestead exists neither can change the residence of the other from that homestead without such other's consent or unless another suitable homestead is provided.' " *Id.* at 324 (quoting *Bailey*, 337 Ill. at 622). The *Bailey* court was also clearly referring to what is now section 16 of the Rights of Married Persons Act, which, again, addresses removal from the homestead and requires either consent or provision of another suitable homestead. 750 ILCS 65/16 (West 2012).

¶ 28      We reject defendants' argument that the certified question must be answered in the affirmative because the homestead exemption statute and its "companion" statutes reflect the legislature's intent to create a homestead estate in marital property. Defendants point to section 16 of the Rights of Married Persons Act and section 27 of the Conveyances Act. We agree with the *Belcher* court that these statutes (and other provisions in the Code addressing homestead estates) do not affect our analysis of section 12-901 of the Code. Stated differently, they have no bearing on what type of property or other interest may give rise to a homestead exemption under section 12-901 of the Code. Section 16 of the Rights of Married Persons Act does not purport to create a right in a particular property. Section 27 of the Conveyances Act presupposes a right of homestead and does not create one. Turning to the Code, we recognize that various aspects of the homestead estate are set forth in 13 sections of the Code (735 ILCS 5/12-901 to 12-912 (West 2012)) and that two or more statutes that relate to the same subject should be "read harmoniously so that no provisions are rendered inoperative" (*Knolls Condominium Ass'n v. Harms*, 202 Ill. 2d 450, 458-59 (2002)). Our conclusion here does not run afoul of this maxim, or of the one instructing that homestead exemption statutes are to be liberally construed, because the sections upon which defendants rely address different rights and procedures and do not touch upon the exemption that is addressed in section 12-901 of the Code. Section 12-902, for example, addresses death or desertion and has no application here, and section 12-904, which addresses releases, waivers, and conveyances, similarly does not come into play, because we are not addressing whether Lina waived an exemption.

¶ 29      We also find defendants' reliance on *Willard*, a more recent appellate court decision, to be misplaced. In that case, the husband, who was the sole titleholder, conveyed the couple's residence into a land trust and assigned his beneficial interest as security for a loan. The wife did not sign any of the relevant documents. The husband defaulted on the loan, and the property was sold. The *Willard* court stated that the wife had a homestead "right," noting that the homestead statutes[8] "benefit[ ] not just the householder, but the family, and affords the householder's spouse a veto-like power where alienation or encumbrance of the homestead are concerned." *Willard*, 137 Ill. App. 3d at 264. However, the court did not state that the wife was entitled to a homestead *exemption*; it referred to a single homestead "interest" (based upon the husband's title and quoting section 12-904 of the Code, which addresses releases, waivers, and conveyances) and determined that the couple might be entitled to a setoff for the amount of the exemption or a declaration that the sale was void. *Id.*

¶ 30      Finally, defendants attempt to distinguish *Belcher*, arguing that it involved a bankruptcy and that the application of the homestead exemption to a debtor's bankruptcy estate differs

---

[8]The *Willard* court referred to section 12-901 and/or section 12-904 of the Code as the "Homestead Exemption." *Id.*

greatly from a refinancing lender's ability to enforce a mortgage conveyed to it by a married person without the written release of his or her spouse. *Belcher*, they contend, is distinguishable because the court's primary concern there was the debtor in bankruptcy receiving proceeds from the sale of a home surrendered to the bankruptcy trustee. The court read into the statute, according to defendants, a requirement that there exist a formalized interest, "despite the fact that no Illinois case has used such language when interpreting" the statute. They assert that the court was seeking to prevent inequitable hardships to the title-holding spouse's creditors after the debtors *surrendered* their home to the trustee. *Id.* Here, Lina is claiming that her homestead rights were never conveyed to a lender in a refinancing transaction, and she is not seeking relief in the form of a chapter 7 discharge (from all allowable debts in exchange for surrendering property to a court-appointed trustee). We disagree that this distinction warrants a different result. We further disagree that no Illinois case supports the *Belcher* court's holding that a formalized interest must support a claim for an exemption. The *Belcher* court relied on cases stating that the homestead estate can have no existence separate from the title upon which it depends. For example, in *De Martini*, which was decided two years before *Brod*, the supreme court stated:

> "The right of homestead being by our present statute enlarged into an estate, it follows that like all other estates, it can have no separate existence apart from the title on which it depends. We have held that the estate of homestead created by the statute is based upon the title of the householder, and can have no separate existence independently of the title, which constitutes one of the essential elements, and from which it is inseparable." *DeMartini*, 385 Ill. at 136.

That the statute now allows multiple individuals to claim the exemption does not alter the requirement, in our view, that each person seeking to claim an exemption must have a sufficient interest in the property.

¶ 31     Defendants further assert that the *Belcher* court did not consider *Brod* in its analysis and that *Brod* "is far more authoritative than the Seventh Circuit's consideration of homestead in the context of a Chapter 7 bankruptcy." As discussed, *Brod* does not guide our decision in this case.

¶ 32     We recognize that we are bound by supreme court decisions that have not been overruled or modified, no matter their age. *Trotter v. Chicago Housing Authority*, 163 Ill. App. 3d 398, 407 (1987); see also *Trossman v. Philipsborn*, 373 Ill. App. 3d 1020, 1043 (2007); *People v. Long*, 55 Ill. App. 3d 764, 773 (1977). However, this case presents no such scenario. As we have demonstrated, *Brod* is distinguishable. Further, there is appellate court authority for the proposition that mere possession is insufficient to allow a nontitled spouse to claim the homestead exemption in section 12-901 of the Code and there is recent persuasive federal case law, whose reasoning we adopt herein, consistent with Illinois authority.

¶ 33                                                    III. CONCLUSION

¶ 34     For the foregoing reasons, we answer the certified question in the negative, finding that a spouse who is not on title to property, but is the spouse of the titleholder and maintains the

property as her primary place of residence, cannot claim the homestead exemption under section 12-901 of the Code.

¶ 35        Certified question answered.