# Illinois Official Reports

## Appellate Court

---

### *PNC Bank, National Ass'n v. Pattermann*, 2016 IL App (3d) 150568

---

| | |
|---|---|
| Appellate Court Caption | PNC BANK, NATIONAL ASSOCIATION, Plaintiff-Appellee, v. STEVEN M. PATTERMANN, STEVEN M. PATTERMANN, as Trustee of the Steven M. Pattermann Revocable Trust Instrument Dated April 3, 2002 for Benefit of Steven M. Pattermann, HARRIS NATIONAL ASSOCIATION, Successor by Merger to Harris Bank Naperville, RIVER RUN HOMEOWNERS ASSOCIATION, THE LAW OFFICE OF EDWARD R. JACQUAYS, PANOS & ASSOCIATES, LLC and PNC BANK, NATIONAL ASSOCIATION, Defendants (Gina Pattermann, Intervenor-Appellant). |
| District & No. | Third District<br>Docket No. 3-15-0568 |
| Filed | September 23, 2016 |
| Decision Under Review | Appeal from the Circuit Court of Will County, No. 10-CH-4508; the Hon. Daniel Rippy, Judge, presiding. |
| Judgment | Certified question answered. |
| Counsel on Appeal | Timothy J. Somen, of Somen Law Firm, LLC, of Inverness, for appellant.<br><br>Frank P. Andreano, of Castle Law, of Joliet, for appellee. |

PRESIDING JUSTICE O'BRIEN delivered the judgment of the court, with opinion.
Justices Holdridge and Wright concurred in the judgment and opinion.


**OPINION**

¶ 1     Intervenor, Gina Pattermann, filed an interlocutory appeal from a grant of partial summary judgment disposing of her homestead interest in mortgaged property in a foreclosure action brought by PNC Bank against several defendants, including Gina's ex-husband, defendant Steven Pattermann.

¶ 2                                   FACTS

¶ 3     Steven and Gina Pattermann were married on August 14, 1998. Prior to the marriage, Steven held title to the property that is the subject of these proceedings, which was a vacant lot at that time. On or about February 2, 2001, Steven and Gina agreed to take out a mortgage from HSBC Mortgage Corporation to finance the building of the marital residence on the property. The property remained titled in Steven's name alone, and Steven executed a mortgage and a promissory note to finance the construction. At that time, Gina executed a waiver of her homestead interest.

¶ 4     On April 3, 2002, Steven created the "Steven M. Pattermann Revocable Trust" (the Trust), and transferred title to the subject property to the Trust. The quitclaim deed expressly stated that Steven was married to Gina and provided: "Per the Attached [ ] hereby releasing and waiving all rights under and by virtue of the Homestead Exemption Laws of the State of Illinois." It was only signed by Steven and contained only a notarization of Steven's signature.

¶ 5     On September 2, 2003, Steven, as trustee of the Trust, signed a new mortgage and note for the subject property with the lender MidAmerica Bank, FSB, the predecessor in interest of the plaintiff, PNC Bank. The proceeds from this note paid off the original loan from HSBC Mortgage Corporation. Gina was not a party to the MidAmerica Bank transaction, and she did not reexecute a waiver of homestead. Thereafter, on June 24, 2005, Steven, as trustee of the Trust, borrowed additional monies from MidAmerica Bank, signing another promissory note and a junior mortgage.

¶ 6     On August 24, 2005, Steven filed for divorce from Gina. In the divorce proceedings, the circuit court entered a judgment for dissolution of marriage that disposed of the marital assets of Steven and Gina. With respect to the subject property, the marital residence, the circuit court found that the vacant lot had been Steven's nonmarital property but that it was transmuted to marital property because the home was built with nonmarital and marital funds and maintained by marital funds. The circuit court found that the fair market value of the marital residence was $900,000 and the equity in the residence was to be determined by subtracting the first mortgage from that amount. The circuit court further ruled that the junior mortgage, a home equity loan, was the sole responsibility of Steven. Upon refinancing of the mortgage and payment by Gina to Steven of sums due pursuant to the division of marital assets, Steven was ordered to deliver to Gina a quitclaim deed, conveying the property to Gina. The circuit court order stated that if Gina was unable to refinance with six months of the judgment, then the

marital residence should be sold and the net proceeds divided in accordance with the judgment. Commencing on July 1, 2008, Gina was to be responsible for the payment of the mortgage, real estate taxes, and expenses of the marital residence. The circuit court did not address Gina's homestead interest. Gina appealed the dissolution judgment but did not raise any issue with respect to the marital residence other than to challenge its value as a marital asset when it was encumbered by the first mortgage. See *In re Marriage of Pattermann*, No. 3-09-0472 (2011) (unpublished order under Supreme Court Rule 23).

¶ 7        During the pendency of the dissolution appeal, on July 28, 2010, PNC Bank filed the current foreclosure action. PNC Bank alleged that the first mortgage was in default and that the balance due at that time was $506,587.20. On July 10, 2014, PNC Bank filed a motion for partial summary judgment, seeking an order that Gina did not possess a homestead right in the subject property following the dissolution of marriage. The circuit court granted the motion, finding that Gina no longer possessed a homestead interest pursuant to *GMAC Mortgage, LLC v. Arrigo*, 2014 IL App (2d) 130938. Gina's motion for reconsideration was denied. However, the circuit court certified the issue to the appellate court and entered an appropriate Illinois Supreme Court Rule 308(a) (eff. Feb. 26, 2010) order. Gina filed an application for leave to appeal pursuant to Rule 308(b), which was allowed.

¶ 8                                                      ANALYSIS

¶ 9        Gina argues that the circuit court erred in holding that her homestead interest was extinguished by the divorce judgment. The question certified for review is whether a former spouse loses her homestead exemption in property arising pursuant to section 12-901 of the Code of Civil Procedure (Code) (735 ILCS 5/12-901 (West 2012)) by virtue of divorce where the divorce decree grants the former spouse specific formal rights in the property, effects a self-executing present conveyance of those rights, and does not otherwise address or dispose of the former spouse's homestead interest in the property. PNC Bank argues that the certified question is purely hypothetical in this case but, in any event, Gina's homestead rights terminated upon her divorce. Our review of this issue is *de novo*. *In re M.M.D.*, 213 Ill. 2d 105, 113 (2004).

¶ 10       The estate of homestead is one of statutory creation. *GMAC Mortgage, LLC v. Arrigo*, 2014 IL App (2d) 130938, ¶ 15. Section 12-901 of the Code is the homestead exemption statute and provides:

> "Every individual is entitled to an estate of homestead to the extent in value of $15,000 of his or her interest in a farm or lot of land and buildings thereon, a condominium, or personal property, owned or rightly possessed by lease or otherwise and occupied by him or her as a residence, or in a cooperative that owns property that the individual uses as a residence." 735 ILCS 5/12-901 (West 2012).

¶ 11       "A homestead is a possessory estate, requires actual possession by a householder, and some right in the property to which the homestead attaches." *Rice v. United Mercantile Agencies of Louisville*, 395 Ill. 512, 515 (1946). "[I]t is not necessary that the householder have a fee title upon which to predicate his homestead estate." *Rice*, 395 Ill. at 515. The question, then, is what right in the property, less than a fee title, is sufficient for a homestead right to attach?

¶ 12       In concluding that Gina did not have a right in the property to which homestead could attach, the circuit court relied on *GMAC Mortgage, LLC v. Arrigo*, 2014 IL App (2d) 130938.

- 3 -

In *Arrigo*, the Second District concluded that the wife of the titleholder to property, where the wife maintained her primary place of residence, could not claim the homestead exemption because she held no formalized interest in the property. *Id.* ¶ 12. In that case, the husband held title to the property where both the husband and the wife maintained their primary place of residence, but the wife did not own or lease the property. *Id.* ¶ 17. In reaching its conclusion that the wife could not claim a homestead exemption, the *Arrigo* court relied on *In re Belcher*, 551 F.3d 688 (7th Cir. 2008), a bankruptcy case wherein the Seventh Circuit, applying Illinois law, concluded that a husband, whose name was not on the title or the mortgage and who did not have any other formalized interest in the property, could not claim a homestead exemption. *Id.* at 689. In reaching its decision, however, the Seventh Circuit noted that a nontitled spouse had a potential equitable interest in the marital home under Illinois divorce and probate laws, but neither of those situations were triggered in *Belcher* where both spouses were still alive and married at the time the bankruptcy petition was filed. *Id.* at 691; *Arrigo*, 2014 IL App (2d) 130938, ¶ 19; see also *In re Smith*, 811 F.3d 228, 243 (7th Cir. 2016) (recognizing the potential interest of a divorced spouse or a surviving spouse despite lack of title).

¶ 13    In this case, though, one of those situations noted in *Belcher* was triggered in that the dissolution proceedings preceded the foreclosure proceedings. Under the Illinois Marriage and Dissolution of Marriage Act, Gina had a potential equitable interest in the marital home. See 750 ILCS 5/503(b)(1) (West 2012) ("For purposes of distribution of property ***, all property acquired by either spouse after the marriage and before a judgment of dissolution of marriage or declaration of invalidity of marriage *** is presumed marital property."). In the dissolution proceedings, the circuit court determined that the marital home was marital property and made rulings with respect to the marital home without any mention of the homestead exemption. PNC Bank argues that the circuit court conclusively determined all interests Gina may have had in the property, including any homestead interest, in the dissolution judgment, even though the judgment made no mention of homestead.

¶ 14    Section 12-905 of the Code provides that "[i]n case of a dissolution of marriage, the court granting the dissolution of marriage may dispose of the homestead estate according to the equities of the case." 735 ILCS 5/12-905 (West 2012). Gina contends that, while the circuit court had the authority to adjudicate the parties' respective homestead interests, it was not required to do so. PNC Bank cites *In re Marriage of Naguit*, 104 Ill. App. 3d 709 (1982), wherein the Appellate Court, Fifth District, found that a wife could not raise the issue of her homestead exemption for the first time on appeal from a divorce judgment. *Id.* at 723. The marital home in that case, though, was found to be nonmarital property belonging to the husband, resulting in the extinguishment of any equitable or formalized interest of the wife in the home at the time of the dissolution judgment. *Id.* Conversely, in this case, the marital home was ruled to be marital property. It is possible that the circuit court, in determining the disposition of the marital home, disposed of Gina's homestead estate. But the statutory language that the circuit court "may" do so did not require it to do so. 735 ILCS 5/12-905 (West 2012).

¶ 15    Thus, we answer the certified question in the negative. A former spouse does not, as a matter of law, lose her homestead exemption in property by virtue of a divorce decree that grants her an interest in the property but does not address or dispose of the former spouse's homestead interest in the property.

¶ 16 CONCLUSION

¶ 17 Certified question answered.